**H. S. TENNELL, Appellant,**

v.

**ESTEVE COTTON COMPANY, Appellee.**

No. 8695.

Court of Civil Appeals of Texas, Amarillo.

Dec. 28, 1976.

Rehearing Denied Jan. 24, 1977.

Brock, Waters & Galey, Charles E. Galey, Lubbock, for appellant.

Grady, Johnson, Smith & Blakeley, Thomas A. Blakeley, Jr., Dallas, for appellee.

REYNOLDS, Justice.

A cotton merchandising company brought this suit to recover from a cotton grower the difference between the market price and the contract price of undelivered cotton. The trial court, calculating the contract price in lieu of the disregarded jury finding thereof, rendered judgment on the balance of the verdict, decreeing that the cotton company recover the market-contract price differential for the undelivered pounds of the greatest number of bales the jury found would not be unreasonably disproportionate to the number estimated to be delivered under the contract. Reformed to provide for recovery on the entire production contracted and for statutory interest and, as reformed, affirmed.

By written contract of 5 April 1973, H. S. Tennell,[1] as seller, and C. Young,[2] as buyer and commission agent for Gant Cooley Cotton Co., Inc., provided for the purchase and sale of Tennell's "entire production of lint cotton for the 1973–74 cotton harvesting season from" 120 acres of Farm No. D–30 in Hale County, Texas, estimated to be 100 bales. On 20 April 1973, Gant Cooley assigned to appellee Esteve Cotton Company, a Dallas-based cotton merchandising company engaged in selling cotton to be produced in the future to cotton mills, the contract, which was prepared on a typewritten form with spaces for completion and contains the following information reproduced verbatim:

PURCHASE AND SALES AGREEMENT

The following agreement is entered into by and between _____ *H. S. Tennell* , of *Rt 2 Abernathy Tex.* herein known as Seller, and *C. Young-* of *1312-Texas Ave Lubbock Texas* herein known as Buyer. Seller hereby agrees to sell and deliver, and does hereby sell, assign, and convey to Buyer the entire production of lint cotton for the 1973-74 cotton harvesting season from the following listed acreage in _____ County, Texas, excluding any cotton that has been harvested and ricked as of the date of execution of this contract:

| Farm No. | Acreage | Estimate of No. of Bales To Be Delivered Under This Contract |
|---|---|---|
| *D 30* | *120* | *100* |

\* \* \* \* \*

(4) The price shall be related to the official USDA government loan value as determined by the original USDA official government class as follows:

Grades

| mike Pts over | AllSpts+Co-Gt+70-71 mike Pts over | Lrgest Stains Mike Pts over |
|---|---|---|
| *2/1-51-22/52 Yrs. 35 | 1050* | *35 | 700* | *35 | 400* |
| *33 | 1050* | *33 | 700* | *33 | 400* |
| *3032 | 950* | *3032 | 600* | *3032 | 400* |
| *27-29 | 800* | *27-29 | 500* | *2729 | 400* |
| *24-26 | 400* | *24-26 | 400* | *2426 | 400* |
| *-24 | 200* | *-24 | 200* | *-24 | 200* |

\* \* \* \* \*

(5) Buyer shall be under no obligation to accept and pay for cotton classed B.G. (below grade) as determined by the original USDA official government class.

or

(5) The price for B.G.'s shall be *10¢* .

(Strike out inapplicable paragraph)

1. H. S. Tennell, residing northeast of Abernathy, near Lubbock, Texas, has been a cotton farmer for nearly 37 years.

2. Clarence Young, a resident of Lubbock, has been a cotton buyer for 35 or 40 years, buying cotton both for himself and as agent for others. He has known H. S. Tennell for 23 or 24 years, having purchased Tennell's cotton several times in years past, although this is the first time he contracted Tennell's future production.

(6)  Seller warrants and represents that he is the absolute owner in fee simple of all cotton delivered to Buyer under this contract and that such cotton is free and clear of all liens and encumbrances, except as follows: lien in favor of                        .
Seller also warrants and represents that he is either the owner of the land on which the cotton is produced, or that he has authority from the owner of the land to enter into this contract for the sale of each and every bale of cotton to be produced on the above described acreage and agrees to hold Buyer harmless from any claims which might be asserted against him by reason of the existance of any undisclosed liens and encumbrances or by reason of Seller's failure to account to the owner of the land for any interest which such land owner may have in any cotton sold pursuant to this contract, or Seller's lack of authority to enter into this contract.

(7)  Seller and Buyer, with Gant Cooley Cotton Co., Inc. acting as agent for Buyer, have carefully read and fully understand the terms and provisions of the foregoing contract, which represents the entire agreement between the parties.  Nothing in this contract shall be taken as evidence that Gant Cooley Cotton Co., Inc. is authorized to act as agent for Buyer on any transaction other than the transaction covered by this contract.
*  *  *

Gant Cooley prepared the form and supplied it to Young, who completed the spaces in handwriting.  Farm identification, acreage and estimated production information was supplied by Tennell, and the data entered in paragraph (4) was copied from information supplied daily by Gant Cooley.

The paragraph (4) column heading "Mike" is an abbreviation for the term "micronaire."  Micronaire is a qualitative measurement of the coarseness or fineness of the cotton fiber; the coarser the fiber, the higher is its micronaire.  The most desirable upland cotton is that within the premium micronaire range of 3.5 through 4.9 inclusive.  Cotton within this range, the one on the official United States Department of Agriculture government loan value scale to which no discounts apply, generally brings the same price, while cotton either above or below the premium micronaire range brings a slightly lower price.

In the same paragraph, the columns labeled "Pts. over" refer to the amount in excess of the official USDA government loan value of the cotton to be paid for cotton purchased under the contract.  Each one hundred points equals one cent per pound; thus, cotton with a micronaire reading of 3.5 commands a price under the contract of eleven hundred points, or eleven

cents per pound, over the loan value of the cotton.  The loan value is determined from the price fixed by the USDA for the various grades and staples of cotton after subtracting the discount, if any, for the micronaire quality of the cotton.

At the time the contract was executed on 5 April 1973, the parties did not know, and it was impossible to ascertain, either the micronaire quality of the cotton to be later produced by Tennell or the loan value.  The coarseness of the cotton fiber depends upon weather conditions which, in West Texas, vary yearly, and the USDA official publication of loan values was not released, according to this record, until 17 May 1973.

At harvest time, the market price for 3.5 micronaire cotton was approximately twice the contract price.  Tennell produced from the designated farm 175 bales of cotton, each having a micronaire measurement in excess of 3.5.  After delivering 49 bales and receiving the contract price shown for 3.5 micronaire cotton, Tennell refused to deliver any more cotton at that price.

Esteve then instituted this suit against Tennell.  Esteve pleaded that the contract unambiguously covers all cotton produced by Tennell from the farm or, alternatively, that if the contract is ambiguous, it was the intention of the contracting parties to cover all cotton produced, with the price for 3.5

micronaire cotton applicable to cotton with a micronaire measurement in excess of 3.5. By its live trial pleadings, Esteve sought recovery for the difference between either its cost of cover or the market price at the time it learned Tennell would deliver no more cotton and the contract price for the produced but undelivered 126 bales of cotton. After specially excepting to Esteve's pleadings and asserting defenses to the cause of action, Tennell joined the issue of the contract's coverage, alleging that the contract did not include cotton produced with a micronaire measurement in excess of 3.5.

Taking evidence, which included the testimony of Tennell and Young of the circumstances surrounding the execution of the contract and their intent to exclude or include cotton in excess of 3.5 micronaire measurement, the trial court submitted special issues to a jury. Corresponding to the numbered submissions, the jury answered that:

(1) the parties mutually intended that the contract price for 3.5 mike cotton should apply to any cotton produced that would mike 3.5 or higher;

Both (2) the 49 bales of cotton delivered by Tennell and (4) the 175 bales produced by Tennell were unreasonably disproportionate to the stated estimate of 100 bales shown in the contract;

(3) 75 bales is the least number, and (5) 125 bales is the greatest number, of bales that would not be unreasonably disproportionate to the stated estimate of 100 bales shown in the contract;

(6) the parties did intend to include the landlord's share of the cotton produced by Tennell;

(7) at the time Esteve learned no more cotton would be delivered, the market price of the cotton Tennell produced but did not deliver was 60.5 cents per pound;

(8) the contract price of the cotton Tennell produced but did not deliver was 60.5 cents per pound; and

(9) Esteve, through Young, did not convert the 49 bales delivered by Tennell.

Receiving the verdict, the court, acting on motions after notice, disregarded the jury's answer to special issue no. 8 upon finding that the undisputed evidence established the contract price of the produced but undelivered cotton at 28.70 cents per pound, and specifically accepted the findings and answers of the jury on all other issues, further reciting that as a matter of law Tennell did contract to sell the landlord's share of the cotton. The court then rendered its 21 November 1975 judgment decreeing that Esteve recover from Tennell the sum of $12,344.12—computed on 38,818 pounds (the weight of the 76 undelivered bales of the 125 bales found by the jury to be the greatest number of bales not unreasonably disproportionate to the estimated 100 bales shown in the contract to be delivered) at 31.8 cents per pound (the difference between the market price of 60.5 cents per pound and the contract price of 28.7 cents per pound determined by the court)—with interest thereon from date at the rate of six percent per annum and costs.

Each party indicated dissatisfaction with the judgment rendered. As appellant, Tennell presents eighteen points of error; as appellee, Esteve advances four cross-points.

■ The contract giving rise to this litigation is one of several completed on identical forms by Young in contracting with cotton farmers in 1973. Recently, in *Esteve Cotton Company v. Hancock*, 539 S.W.2d 145 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.), this Court had occasion to review one of these contracts which differs from the one now before us only in the name of the farmer, his farm designation and acreage, the estimated number of bales to be delivered, and the failure in *Hancock* to select which of the two paragraphs (5) was applicable. After an in-depth consideration of the contract, we concluded in *Hancock* that, although the unequivocal agreement is for the sale and delivery of the entire future production of the 1973–74 crop of lint cotton from the listed acreage, the contract was ambiguous because it could not be said as a matter of law that cotton whose micronaire was not specifical-

ly listed in paragraph (4) was intended to be included or excluded, and, therefore, parol evidence bearing on the intent of the contracting parties was admissible. 539 S.W.2d 155–57. We adhere to those holdings and overrule Tennell's first, seventh and eighteenth points of error charging the trial court with error in failing to hold the contract did not cover cotton with a micronaire measurement in excess of 3.5 as a matter of law, in admitting Young's testimony of the conversations of the parties and of his intent and understanding in executing the contract, and in overruling Tennell's objections and motion to disregard the answer to special issue no. 1.

Not preserved for appellate review are Tennell's second- and third-point complaints of the overruling of his motion for instructed verdict because he was not given notice of the assignment of the contract to Esteve and that the failure to do so made the contract unenforceable by Esteve. A point of error cannot be based upon a motion for instructed verdict; to form the basis of a point of error the grounds in a motion for instructed verdict must be carried forward as assignments of error in the motion for new trial. *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887, 891–92 (1960). The only manner in which the matters in the motion for instructed verdict were included in Tennell's amended motion for new trial is by the statement, "The court erred in failing to grant Defendant's Motion for Instructed Verdict." Reference to the motion for instructed verdict reveals that it submits seven separate grounds. Rules 320, 321, 322 and 374, the Texas Rules

of Civil Procedure governing the form of assignments in motions for new trial which become the basis of points of error on appeal, require that the motion for new trial clearly specify each ground of error on penalty of waiver; therefore, an objection to an error of the trial court is not preserved by mere reference in the motion for new trial to a prior motion, even though the prior motion did make a particular objection clear and certain. *J. Weingarten, Inc. v. Moore,* 449 S.W.2d 452, 453 (Tex.1970). Thus, the assignments in Tennell's amended motion for new trial are too general to preserve these complaints for appellate review.[3]

By the same reasoning, the tenth point was not preserved. It, listing multifarious contentions of error in overruling the motion for instructed verdict and objections to the court's charge, is merely referenced to the amended motion for new trial assignment of "The Court erred in failing to grant Defendant's Motion for Instructed Verdict."

In the same vein is the fifteenth point. It is that the court erred in failing to grant Tennell's motion for judgment on the verdict because the jury's verdict entitles him to judgment in this case. The basis of the point is the fifty-ninth assignment of error in Tennell's amended motion for new trial which reads: "The Court erred in failing to grant Defendant's Motion for Judgment on the Verdict."

Notwithstanding, it has been appropriate to consider the specific contentions and arguments made under the waived points ei-

---

**3.** Had the points been properly preserved for consideration, they would not reflect reversible error. The contract is silent as to, and it therefore does not prevent, an assignment. The Texas Business and Commerce Code (1968) recognizes that unless otherwise agreed, all rights of either party may be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden of risk imposed on him by his contract, or impair materially his chance of obtaining return performance. V.T.C.A., Bus. & C. § 2.210(b). Tennell has not pointed to any circumstance in the transaction or to any evidence in the record to show that the assign-

ment falls within one of the exceptions. He merely asks upon whom he would have demanded performance had the market price of cotton fallen below the contract price, and then he argues that, because he did not know about Esteve, his chance of return performance was materially impaired. The brief answer is that Tennell's chance of return performance could not be materially impaired by the mere addition of a party to whom he could look for performance, for, although by virtue of the assignment Esteve became obligated for the contractual performance of Gant Cooley, the latter was not thereby relieved of its contractual obligation if Esteve failed to perform.

ther singularly or in connection with other interrelated and sometimes grouped points. In considering them, we find that none of the contentions show reversible error.

To establish the contract price of the cotton, proof of the official USDA government loan value to which the contract price was related was required. Esteve's Exhibit No. 4, a recap sheet of government loan prices for different grades and staples of cotton for the crop year 1973, was first excluded from evidence upon objection that it was not properly authenticated under Vernon's Ann.Civ.St. art. 3731a, § 4 (Supp. 1976), but it was later admitted for the limited purpose of showing Tennell's familiarity with the micronaire discount system. Esteve's Exhibit No. 5, a publication entitled "Weekly Cotton Market Review Vol. 54, No. 41" and imprinted "United States Department of Agriculture, Agricultural Marketing Service, Cotton Division" which listed official government loan values and micronaire discounts for the 1973 cotton season, was admitted in evidence over the same objection that was made to Exhibit No. 4.

Tennell's seventeenth point is that the court erred in admitting Exhibit No. 5. There is no assignment in the amended motion for new trial which asserts error in the admission of Exhibit No. 5 and, therefore, we may not consider the point. Rule 320, T.R.C.P. There is, however, the thirty-first assignment of error in the amended motion for new trial which challenges the admissibility of Exhibit No. 4, and Tennell now argues that this was a clerical error and he meant Exhibit No. 5. The purpose of an assignment of error in a motion for new trial is to clearly identify the error in order that the trial court may fully understand the complaint and have a fair opportunity to take corrective action. Here, both Exhibits Nos. 4 and 5 were admitted in evidence. The complaint of the admission only of Exhibit No. 4 neither identified for the trial court the error now advanced on appeal respecting Exhibit No. 5, nor afforded the trial court the opportunity to consider the admission of Exhibit No. 5 for

corrective action. Because the error now contended for was not distinctly set forth in the amended motion for new trial, it shall be considered as waived, Rule 374, T.R.C.P., and the question is not before us. *Meyer v. Great American Indemnity Company,* 154 Tex. 408, 279 S.W.2d 575, 578–79 (1955); *Collins v. Smith,* 142 Tex. 36, 175 S.W.2d 407, 409 (1943).

By his eighth point, Tennell contends that the trial court erred in excluding, after a hearing outside the jury's presence, the offered testimony of his witnesses L. L. Duckett, Vic Struve, Ruth Cox and Charles Lambert. The excluded testimony was that Duckett and Young discussed in the Fall of 1973 a "3.5 mike contract" with micronaire categories similar to those of the Tennell-Young contract which specified the highest micronaire category as merely "3.5" rather than "3.5 and above." Duckett said Young told him that "all those contracts that only read the 3.5 were incomplete contracts." Vic Struve's testimony was that in a conversation in the Fall of 1973 with Young about his "3.5 mike contract" with a different company, Young said, "It looked like it meant just exactly what it said" and that he (Young) would like to buy cotton over 3.5. Ruth Cox said she heard Young tell Struve that Struve's contract was incomplete. Charles Lambert stated that in the Fall of 1973 after he told Young that his contract "reads only up to 3.5 mike," Young offered to buy all of his cotton that miked above 3.5. Lambert's contract was on a form different from that of the Tennell-Young contract.

In *Esteve Cotton Company v. Hancock, supra,* similar testimony was given by these witnesses. 539 S.W.2d 152–53. There, because the testimony was admitted for the limited purpose of aiding the jury, if it did, in determining the intent of the contracting parties, we held that it was within the trial court's discretion to receive the testimony limited to its relevancy to the contested issue of intent. 539 S.W.2d 159. Here, however, Tennell does not contend that the testimony was offered for that purpose; instead, he contends that it was admissible

for impeachment purposes and as an admission against interest.

■ The testimony was admissible for impeachment by prior inconsistent statements, Tennell says, because during the course of the trial Young responded that he did not remember any conversations with these witnesses concerning a 3.5 mike contract. It must be noted that the response by Young was made, not in the presence of the jury, but in the hearing held outside the jury's presence, and there is no complaint to the exclusion of this assertion by Young. Obviously, then, because Young's "did not remember" response was not made to, and could not be considered by, the jury, it was not subject to impeachment by evidence of his prior statements. 1 C. McCormick and R. Ray, Texas Law of Evidence § 697 (2d ed. 1956).

■ Further Tennell says that the excluded testimony was admissible for the additional reason that it was an admission against interest. Even if we ignore the pronouncement in *Singleton v. Carmichael*, 305 S.W.2d 379, 384 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.), that where evidence is offered for two purposes and it is inadmissible for one purpose, although it may be admissible for the other, its exclusion is not improper, we find no error in excluding the testimony. Young, who was not made a party to the litigation, was the agent for Gant Cooley at the time the contract was made. The offered assertions by Young were made some months following the execution of the contract and there is no showing of Young's agency status at that time. Absent a showing that Young's statements were authorized so as to bind

Esteve, there was no error by the court in not receiving the testimony. *Big Mack Trucking Company, Inc. v. Dickerson*, 497 S.W.2d 283, 287 (Tex.1973). The eighth point is overruled.

The trial court's refusal to submit two requested special issues with accompanying instructions gives rise to Tennell's fourth point of error. First requested was an issue inquiring whether Esteve failed to give Tennell notice of the assignment of the contract, and, conditioned upon an affirmative answer to that issue, the second requested issue asked whether the failure impaired materially Tennell's chance of obtaining performance of the contract by Esteve. We perceive no error.

■ It was undisputed that Esteve did not give Tennell notice of the assignment; therefore, the submission of the first requested issue on this undisputed fact was unnecessary. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex.1971). With regard to the second requested issue, Tennell has not referred to any evidence in the record raising the issue whether his failure to receive notice materially impaired his chance of obtaining performance by Esteve; consequently, without evidence thereof, the issue was not submissible. *Ladd v. Knowles*, 505 S.W.2d 662, 669 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). The fourth point is overruled.[4]

The gravamen of the sixteenth point is that the jury was erroneously instructed as to the law of "usage of trade" as it applied to this case. Included in the instructions preceding the special issues was the following:

---

4. Tennell's argument under this point, rather than contending an entitlement to submission of the fact issue, is that, as a matter of law, Esteve's failure to give him notice of the assignment was a repudiation of the contract by Esteve for which Tennell could suspend his performance. The premise is that V.T.C.A., Bus. & C. § 2.210(e) states that a party may treat any assignment which delegates performance as creating reasonable grounds for insecurity and may demand assurances from the assignee which, under V.T.C.A., Bus. & C. § 2.609(a), allows a suspension of performance until assurance is received, and, by authority of V.T.C.A., Bus. & C. § 2.609(d), if the assurance is not received within a reasonable time not exceeding thirty days, there is a repudiation of the contract. Plainly, suspension of performance is not available until assurances have been demanded and repudiation does not occur unless the demanded assurance is not received. Here, however, Tennell did not demand any assurance upon which his suspension of performance or Esteve's repudiation could be founded.

You are instructed that a contract may be explained or supplemented by usage of trade. Usage of trade means any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question.

You are further instructed that where there is nothing in the agreement to exclude the inference, the parties are presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates.

The first paragraph is predicated on the first sentence of V.T.C.A., Bus. & C. § 1.205(b), which cautions that "(t)he existence and scope of such a usage are to be proved as facts." The second paragraph is from the opinion in *Dwyer v. City of Brenham,* 70 Tex. 30, 7 S.W. 598, 599 (1888), approving the admission of parol evidence of usage, which was consistent with the contract's language, to show the proper meaning of the language used in the contract.

■ Although the instruction itself does not identify any particular usage of the cotton trade, the parties seem to agree that it was directed to their controversy whether the micronaire term "3.5" means "3.5 and above." If this be the case, the instruction should not have been given because there is no probative evidence of that usage in the cotton trade; i. e., there is no evidence that the term "3.5" is used to mean "3.5 and above" with such regularity of observance in the cotton trade as to justify the expectation that it was used by the parties in that respect in their contract. Therefore, there could be no presumption that the parties intended to contract with reference to a usage that was not established in the cotton trade.

The question then arises whether the inclusion of this instruction in the charge was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P. In considering the question, we are required to examine the whole record and to indulge every reasonable presumption consistent with the record in favor of the correctness of the judgment. *Gordon v. Aetna Casualty & Surety Company,* 351 S.W.2d 602, 604 (Tex. Civ.App.—Eastland 1961, writ ref'd).

The instruction was the fourth of six separate instructions preceding the special issues; it was not directed to any particular special issue; it did not identify any usage of trade to which the instruction related; and, if it in fact was intended to pertain to the term "3.5" embraced in special issue no. 1, there is in the record, independent of any presumption that may have been prompted by the instruction, other evidence of sufficient probative force to support the jury's answer to that special issue. We conclude, under the requirements for our review, that the submission of the instruction was not reversible error. The sixteenth point is overruled.

■ If Tennell breached the contract, Esteve had its choice to cover, V.T.C.A., Bus. & C. § 2.711, and seek recovery for the difference between the cost of cover, if made in good faith and without unreasonable delay, and the contract price, V.T.C.A., Bus. & C. § 2.712, or not to cover and seek the difference between the market price at the time Esteve learned of the breach and the contract price. V.T.C.A., Bus. & C. § 2.713. The jury was asked, in special issue no. 7, to find the market price of the cotton Tennell produced but did not deliver at the time Esteve learned no more cotton would be delivered, and answered "60.5 cents per pound." Tennell's ninth contention is that it was error to overrule his objections to the damage issue because there are no pleadings to support the submission, it being his position that Esteve pleaded only the damage measure of cost of cover without adducing any proof of cover.

Conceding that its pleadings are not a model of correctness in this respect, Esteve did allege its "damages, based on cost of cover within a reasonable time after learning that Defendant intended to breach his contract, and based on the market price

when Plaintiff learned of the breach, amounts (sic) to at least $165.00 per bale on the cotton produced by Defendant but not delivered." Also, Esteve alleged that it sustained damages "in the amount of 33 cents per pound, or $165.00 per bale, on 126 bales, for a total of $20,790." Tennell neither points to nor argues any exception to this pleading.

The object of pleadings is to give fair and adequate notice to the opposing party of the pleader's contentions. The pleadings may be in general terms and, if not excepted to, are sufficient to admit evidence under the allegations. *Barber v. Corpus Christi Bank & Trust,* 506 S.W.2d 254, 259 (Tex.Civ.App.—Corpus Christi 1974, no writ). Moreover, a plaintiff is not required to allege the applicable legal measure of damages. *Davies v. Texas Employers' Ins. Ass'n.,* 16 S.W.2d 524, 525 (Tex. Comm'n App. 1929, holding approved); *Dallas Railway & Terminal Co. v. Strickland Transp. Co.,* 225 S.W.2d 901, 903 (Tex.Civ. App.—Amarillo 1949, no writ).

In the case at bar, Esteve pleaded both measures of damages generally and, absent an exception, the pleadings authorized the admission of proof of either measure. There was no evidence of cover, but there was evidence of the market value of cotton at the time Esteve learned of Tennell's breach. This evidence authorized the submission of special issue no. 7. In this connection, Tennell alternatively objected that "there is insufficient evidence to support the submission of such issue." The contention must be considered as one of "no evidence" because the court may not refuse to submit an issue merely because the evidence is factually insufficient to support its submission. *Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex.1965). In this respect, Tennell argues only that there is no evidence showing when Esteve "learned" of the date Tennell would not deliver more cotton.

Within the record there is evidence that Tennell, after receiving a "favorable report" from his lawyer, made up his mind on 11 December 1973 not to deliver any more cotton under his contract. On 12 December 1973 Royce Cooley, the assignor of the contract to Esteve, was shown an 11 December 1973 letter addressed to Young from Tennell's lawyer, and he then knew that Tennell was claiming that his cotton was not covered by the contract. Cooley immediately notified Esteve. In view of this evidence, we cannot say that there is no evidence of the date Esteve learned that Tennell would not deliver any more cotton. The ninth point is overruled.

Tennell testified that on 12 December 1973, he sold the 126 bales of cotton he produced but did not deliver under the contract to Texanna Cotton Company for 60.5 cents per pound, "the best bid we could get," and acknowledged that the "market value" on that day was 60.5 cents per pound. His testimony alone is sufficient to support the jury's answer to special issue no. 7. Accordingly, his eleventh point challenging the sufficiency of the evidence to support the answer is overruled.

V.T.C.A., Bus. & C. § 2.305(a) provides that parties, if they so intend, can conclude a contract for sale even though the price is not settled, in which event, subject to the stated contingencies, the price is a reasonable price at the time for delivery. Relying on this section, Tennell requested, and the court refused, submission of Tennell's instruction in the words of § 2.305 and his requested issues inquiring whether at the time of the contract the price for the cotton with a micronaire in excess of 3.5 was not settled, and inquiring of the reasonable price for the 49 bales of cotton Tennell did deliver. The court's refusal to submit the requests is the subject of the thirteenth and fourteenth points of error.

To be submitted are "the controlling issues made by the written pleadings and the evidence." Rule 279, T.R.C.P. It is apparent from both the pleadings and the parties' postures at trial that neither contended Tennell and Young had intended to conclude the contract without settling the price for all cotton. Illustratively, Esteve pleaded that the parties intended the prices spec-

ified for 3.5 micronaire cotton were the prices for all cotton that had a micronaire test of 3.5 or higher or, alternatively, if the contract was ambiguous, "it was never the intention of any party to this contract to exclude any cotton from the contract or to leave the price open for any cotton." Esteve's evidence was adduced to support its pleadings. To the contrary, Tennell pleaded that "(t)he contract is clear and does not cover cotton that has a micronaire in excess of 3.5. There was no intent of the parties, and there was no meeting of the minds between the parties to include cotton above a micronaire of 3.5. All of Defendant's cotton exceeded a micronaire of 3.5, and under the clear, express agreement of the parties Defendant's cotton was not covered by the contract." Tennell's evidence conformed to his pleadings, and he does not suggest that either contracting party testified that they intended to leave the price of any cotton open. Thus, the requested issues, and accompanying instruction, were neither raised by the pleadings nor the evidence. Rule 277, T.R.C.P., requires as the prerequisite for submission that the issues be raised by both the written pleadings and the evidence. The thirteenth and fourteenth points are overruled.

■ The conclusion that open price was not a submissible issue invalidates the reason for the twelfth point. By that point Tennell submits that the court erroneously disregarded the jury's special issue no. 8 answer that the contract price for the undelivered cotton was 60.5 cents per pound. The only reason given to sustain the point is, as we understand Tennell's argument, that the jury's finding was consistent with leaving the price open in the contract. Obviously, the jury's finding could not be consistent with an issue that was not before it. Be that as it may, the court, after the motion was made and notice was given, was authorized by Rule 301, T.R.C.P., to disregard the jury's answer because it has no support in the evidence, and, of course, no jury finding is necessary to establish an undisputed fact. *Wright v. Vernon Compress Company*, 156 Tex. 474, 296 S.W.2d 517, 523 (1957). The contract price was a matter of mathematical calculation from the contract and the evidence of the loan values. The court's calculation of 28.70 cents per pound is consistent with the documentary evidence in the record and the correctness of the calculation has not been disputed by Tennell, who testified that the contract price of the 49 bales he delivered was 28.76 cents per pound. Consequently, the court properly disregarded the jury's answer and computed the contract price from the undisputed evidence. The twelfth point is overruled.

■ As special issue no. 6, the court inquired, and the jury answered, as follows:

Do you find from a preponderance of the evidence that the parties to the contract in question did not intend to include the landlord's share of the cotton produced by H. S. Tennell?

Answer "They did" or "They did not".

ANSWER: They did

It is Tennell's sixth-point-of-error contention that the court erred in holding as a matter of law that Tennell did contract to sell the landlord's share of cotton contrary to the jury's finding. Relying primarily on the opposite of the result reached in *Wilton v. Johnson*, 278 S.W.2d 488 (Tex.Civ.App.—Amarillo 1954, no writ), it is Tennell's view that issue no. 6 was phrased as a double negative and that by its answer, the jury found on sufficient evidence that the landlord's share of cotton was not included in the contract. We do not agree with either the contention or the view.

In *Wilton*, the issue was, "Do you find . . . that the collision was not the result of an unavoidable accident?" The jury was instructed to answer, "It was the result of an unavoidable accident or it was not the result of an unavoidable accident," but the jury disregarded the instruction and answered "No." The court correctly held that the answer constituted a finding that the collision was the result of an unavoidable accident. 278 S.W.2d 489.

Here, however, the jury followed the court's instruction in choosing the answer that reflected their finding. The issue

properly placed the burden of proof on Tennell and, to exclude the landlord's share, he was required to secure the answer, "They did not." The "They did" answer constitutes a finding that the parties intended to include the landlord's share of cotton in the contract. The court specifically accepted this answer. Thus, the court's additional conclusion of law that the parties intended the landlord's share to be included is not contrary to, but it is in harmony with, the jury's answer which has not been challenged on any evidentiary basis. The sixth point is overruled.

In his fifth and last point for consideration, Tennell attacks the judgment allowing Esteve recovery on 125 bales of cotton by challenging, in various ways, the result of the submission of the special issues, and particularly issues nos. 3 and 5, inquiring of the number of bales that are, or would not be, unreasonably disproportionate to the estimate of 100 bales shown in the contract. Without further detailing the challenges, it may be said that Tennell's prime position is that the jury was not asked to determine the exact number of bales that would not be unreasonably disproportionate to the stated estimate, and by authority of V.T.C.A., Bus. & C. § 2.306, Esteve could not, under this record, demand more than the 75 bales the jury found in special issue no. 3 to be the least disproportionate number. As a matter of expediency, this point and Esteve's cross-points three and four will be considered together. Those cross-points are that the court erred in refusing to disregard the answers to special issues nos. 4 and 5 and enter judgment for the undelivered production of 126 bales.

■ V.T.C.A., Bus. & C. § 2.306 concerns an agreement for sale of the output of a seller or the requirements of a buyer. But, here, while there is testimony that estimating the number of bales to be delivered under the contract is for the benefit of the buyer in selling the cotton to mills, the production contracted for was not to be measured by the requirements of the buyer so as to invoke the provisions of V.T.C.A., Bus. & C. § 2.306(a). Instead, the contract

is for Tennell's "entire production" from the acreage. In construing the contract in *Esteve Cotton Company v. Hancock, supra,* we said at 539 S.W.2d 155:

The contractual paragraph first quoted is clear and, therefore, unambiguous. The unequivocal agreement there is for the sale and delivery of the entire future production of the 1973–74 crop of lint cotton from the listed acreage, the exclusion of cotton already harvested being patently inapplicable because the crop had not then been planted. This expression is harmonious with the paragraph (6) provision that Hancock is authorized to contract for the sale of each and every bale of cotton produced on the described acreage.

We adhere to that holding with the result that Esteve is entitled under the contract to recover on the 126 bales of cotton produced from the acreage but not delivered to it. The amount of recovery is established from the undisputed facts in the record. The 64,357 pounds the undelivered 126 bales weighed multiplied by 31.8 cents per pound, the difference between the contract price and the market price when Esteve learned of Tennell's breach, amounts to $20,465.52. It follows that Tennell's fifth point of error is overruled and that Esteve's third and fourth cross-points are sustained.

■ The trial court denied Esteve prejudgment interest. That denial prompted Esteve's second cross-point by which it claims simple interest from the time it learned Tennell had breached the contract. V.A.C.S. art. 5069–1.03 (1971) provides that absent an agreement by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable. The test is said to be that if the measure of recovery or claim, and not necessarily the amount of damages, is determinable at the time of injury, prejudgment interest is properly awardable; if not, interest proceeds from the date of judgment. *Metal Structures Corporation v. Plains Textiles, Inc.,* 470 S.W.2d 93, 103 (Tex.Civ.App.

—Amarillo 1971, writ ref'd n. r. e.). Here, when on 12 December 1973 Esteve learned of Tennell's breach and opted not to cover, its measure of recovery was fixed as the difference between the contract price and the market price on that date, both of which were fixed amounts subject only to calculation. Therefore, the amount of recovery is determinable at the time Esteve learned of the breach and Esteve is entitled to prejudgment interest from 12 December 1973 to 21 November 1975 in the sum of $2,385.22. Esteve's second cross-point is sustained.

 The trial court decreed that its 21 November 1975 judgment shall bear interest from date at the rate of six percent per annum. Esteve asserts in its first cross-point that the court erred in not providing for post-judgment interest at the rate of nine percent per annum in accordance with V.A.C.S. art. 5069–1.05 (Supp.1976), which was amended to change the previous rate of six percent per annum on judgments to nine percent per annum effective 1 September 1975. Tennell responds that the six percent rate is correct because all of the events upon which Esteve's cause of action was based occurred prior to the effective date of the amendment.

In amending the statute to increase the rate of interest on judgments, the legislature left intact the encompassing statutory language reading: "All judgments of the courts of this State shall bear interest at the rate of . . . percent per annum from and after the date of the judgment . . . ." Clearly, it is the date of the judgment, not the time when the cause of action arose, that determines what rate of interest is to be imposed under the statute. The mere fact that the contract was entered into or breached prior to the amendment increasing the post-judgment interest rate is irrelevant where the judgment is rendered subsequent to the amendment's effective date. *Cf. Coles v. Kelsey,* 13 Tex. 75, 78 (1854); *Weatherford, M.W. & N.W. Ry. Co. v. King,* 280 S.W. 235, 237 (Tex.Civ. App.—Eastland 1925, writ dism'd). By the terms of the statute, Esteve is entitled to have its judgment, rendered after the nine percent rate became effective, bear interest at the rate of nine percent per annum from 21 November 1975, the date of the judgment. The first cross-point is sustained.

The judgment of the trial court is reformed to provide that Esteve Cotton Company do have and recover of and from H. S. Tennell the sum of $22,850.74 (consisting of the principal sum of $20,465.52 with prejudgment interest thereon from 12 December 1973 to 21 November 1975 in the sum of $2,385.22), together with interest thereon at the rate of nine percent per annum from 21 November 1975 until paid. As reformed, the judgment is affirmed.