USLIFE TITLE INSURANCE COMPANY OF DALLAS et al., Appellants,

v.

ROSSCO, INCORPORATED, Appellee.

No. 4998.

Court of Civil Appeals of Texas, Eastland.

April 28, 1977.

Rehearing Denied May 19, 1977.

Royal H. Brin and Robert Hyer Thomas, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellants.

Robert H. Mow, Jr. and Barbara Lynn, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellee.

McCLOUD, Chief Justice.

Plaintiff, Rossco, Inc. sued defendants, USLIFE Title Insurance Company of Dallas and USLIFE Title Company of Houston, for conversion of funds received by US-LIFE Houston allegedly belonging to Rossco. Plaintiff asserted that USLIFE Houston was a trustee of certain escrow funds which it agreed to hold and distribute as escrow agent in connection with the closing of a real estate transaction involving a sale by plaintiff to John Lester, E. Mitchell Smith and other related entities and individuals of two real estate developments, Place One Apartments in Houston, Texas, and Tall Timbers Apartments in New Orleans, Louisiana. Rossco alleged that contrary to its fiduciary duties as a trustee, USLIFE Houston refused to forward to plaintiff $105,666.66 which was received by the escrow agent after the closing, and the escrow agent willfully and maliciously breached its fiduciary obligation by sending the money to its alter ego company, defendant, USLIFE Dallas. Defendants contend USLIFE Dallas loaned Lester and Smith $121,500 at the time of the closing in order that the real estate transaction could be completed and the $105,666.66 was properly sent to USLIFE Dallas as part payment of that loan.

The jury found that the $105,666.66 was from the sale of interest in Place One Apartments; USLIFE Houston converted the $105,666.66 to its own use and benefit or the use and benefit of USLIFE Dallas; either or both USLIFE Houston or US-LIFE Dallas participated in the conversion with malice or in wanton or conscious disregard for the rights of plaintiff; USLIFE Houston breached its fiduciary duties to plaintiff with malice or in wanton or conscious disregard for the rights of plaintiff; USLIFE Houston became the alter ego of USLIFE Dallas; $60,000 should be assessed against USLIFE Houston as exemplary damages; and, $30,000 should be assessed against USLIFE Dallas as exemplary damages. Based upon the jury's findings judgment was entered against the defendants, jointly and severally, for $105,666.66 actual damages plus prejudgment interest of $13,-084.18, plus exemplary damages of $60,000, for a total of $178,750.84. The judgment additionally provided for recovery of $30,-000 exemplary damages against USLIFE Dallas. Defendants have appealed. We reverse and remand.

On January 31, 1974, instruments designated as "Closing Agreement" and "Escrow Instructions" were executed by Rossco, Smith and Lester as "Developers" and A. R. Kadell, an employee of USLIFE Houston, as "Escrow Agent." The Closing Agreement provides in part:

"2. Developers agree that all additional proceeds from the sale or other disposition of partnership interests in Place One Apartments, Ltd., a Texas limited part-

nership, of which E. Mitchell Smith, Jr. and John R. Lester are general partners, shall be paid immediately as and when and in whatever amounts received by Developers or any of them to Rossco and shall be credited against payment of the Note B until Note B shall be fully paid.

3. Developers agree that all of the proceeds from the sale or other disposition of partnership interests in Tall Timbers Apartments II, Ltd., a partnership in commendam of which E. Mitchell Smith, Jr., John R. Lester and S. Louis Hutcheson are general partners, shall be paid immediately as and when and in whatever amounts received by Developers or any of them to Escrow Agent for the benefit of Rossco (pursuant to the Escrow Instructions)."

The Escrow Instructions provide in part:

"E. Upon receipt from Developers of funds from the proceeds from the sale or other disposition of partnership interests in Place One Apartments, Ltd., from Developers, if Rossco elects to have such funds channeled through Escrow Agent, Escrow Agent shall record the amount of such proceeds received by him and shall immediately disburse such amounts, as received by him, to Rossco in accordance with instructions given by Rossco.

F. Upon receipt by Escrow Agent of proceeds from the sale or other disposition of partnership interests in Tall Timbers Apartments II, Ltd., pursuant to paragraph 3 of the Closing Instructions, Escrow Agent shall record the amounts of such proceeds as received, and shall place such proceeds in a special escrow account from which they shall be disbursed in accordance with the terms hereof."

Plaintiff contends the above quoted paragraphs 2 and E entitled it to the $105,666.66 which was deposited in an escrow account at the office of USLIFE Houston and later transferred to USLIFE Dallas.

The trial was brief. The only witnesses who testified were Ervin Beal, Treasurer and Secretary of USLIFE Houston and US-LIFE Dallas, and A. R. Kadell, Senior Vice-President of USLIFE Houston, who were called by plaintiff as adverse witnesses.

■ In Special Issue 1, the jury found that the $105,666.66 was from the sale of interest in Place One Apartments. Defendants argue there is no evidence to support the finding. We agree.

Following the real estate closing on January 31, 1974, six checks totaling $105,666.66 were deposited in the "Rossco, Inc.-Lester" escrow account. Plaintiff first argues that Kadell admitted these checks were from the sale of interest in Place One Apartments. We disagree. Kadell testified, when called as an adverse witness, that he had no first hand knowledge regarding the checks, and he only surmised or assumed the checks were from the sale of interest in Place One Apartments. Plaintiff relies upon a statement in Kadell's deposition as an admission and some evidence the funds came from the sale of interest in Place One Apartments. The statement of facts reflects the following questions and answers:

"Q . . . Now, let me refer you to the reverse side of Plaintiff's Exhibit 5, under the date of 2-15-74. There are six checks shown there, are there not?

A Yes.

Q Totaling $105,666.66?

A That's right.

Q Those checks came from the sale of interest in Place One Apartments, did they not, Mr. Kadell?

A Here again we get back to our same question that we had difficulty with a moment ago.

Q Well, just answer my question. You knew they came from the sale of interest in Place One Apartments, didn't you?

A I can't be sure, counsel.

Q Well, didn't you tell me that back on March 20, 1975 when you gave your deposition?

A I think the phrasing was 'we can assume that'.

Q *Well, I think you testified, did you not, that you guessed that I could*

say that you knew that is where they came from.

A Well, I am not trying to be difficult. It is just a play on words.

Q Well, did you know it or didn't you?

A I wasn't given any specific instructions. That was not a factor at that time.

Q Didn't you testify back on March 20 though that you knew that the funds came from Place One Apartments? And I am referring to the funds that came in between January 31 and February 15, 1974.

Q . . . Well, did you so testify?

A I think I could probably use the same words today as I did then.

Q Well, are you changing your testimony that you gave back in March?

A No, sir, I don't think so.

Q March was a lot closer to when all this took place back in 1974 than it is today, isn't it?

A Yes, sir.

Q You would assume your testimony back in March was reliable, wouldn't you?

A Yes, sir.

Q In fact, you took an oath to tell the truth just like you did today?

A That's right.

Q And you are an officer of the Court, you know what that means?

A That's right.

Q Let me back up. I am going to read my question on page 64, line 25, continuing on to the next page. 'And isn't it true that the funds that came in after January 31, 1974, you knew came from the sale of interest in Place One Apartments?' And what was your answer?

A 'Yes, I assumed that. I inferred that from the pattern which had occurred.'

Q And I said, 'Well, you knew that, didn't you?' and what was your answer?

A 'I guess you could say that I knew that.' "

(Emphasis added).

We do not consider Kadell's statement in his deposition, "I *guess you* could say that I knew that", as any evidence to support the jury's answer to Special Issue 1. His statement that he guessed plaintiff's counsel could say "that he knew that" does not constitute an admission. In the preliminary questions propounded by plaintiff's counsel it will be noted that counsel asked Kadell, "Well, I think you testified, did you not, that *you guessed that I* could say that you knew that is where they came from."

■ Plaintiff also argues the jury could properly infer from the circumstantial evidence that the checks came from the sale of interest in Place One Apartments. We disagree. The fact the checks were from the Houston area and were deposited in the "Rossco, Inc.-Lester" escrow account is no evidence the checks came from the sale of interest in Place One Apartments. None of the makers of the checks testified, nor did Lester who delivered the checks to Kadell testify. While the circumstantial evidence tends to show Kadell assumed the checks came from the sale of interest in Place One Apartments, there is no evidence which would permit the jury to properly infer the checks did in fact come from a sale of interest in Place One Apartments. Kadell testified that he had no knowledge as to whether the checks came from the sale of interest in Place One Apartments. He stated he received no instruction from anyone. His assumptions and surmises are not evidence of the vital fact. The jury could disregard Kadell's testimony, but the jury could not properly find the converse of his testimony when there was no independent evidence to support such finding. *Briscoe v. Laminack Tire Service, Inc.*, 546 S.W.2d 695 (Tex.Civ.App.—Texarkana 1977, writ filed).

■ Plaintiff next argues that a fiduciary relationship existed between plaintiff and the escrow agent and the defendants had the burden of establishing the funds

did not come from sale of interest in Place One Apartments. The burden of proof in Special Issue 1 was placed on plaintiff to prove by a preponderance of the evidence the $105,666.66 that was deposited into the escrow account was from the sale of interest in Place One Apartments. Plaintiff has no cross-points and plaintiff's objections to the charge fail to include an objection that the burden of proof was improperly placed on plaintiff in Special Issue 1. We do not reach the question of who should have had the burden of proof. Special Issue 1 placed the burden on plaintiff and plaintiff has failed to properly perfect any complaint.

Since we have found the court erred in awarding plaintiff actual damages, we also reverse the award of exemplary damages. *Phillips v. Wertz,* 546 S.W.2d 902 (Tex.Civ. App.—Dallas 1977, writ filed).

We hold there is no evidence to support the jury's answer to Special Issue 1 and for that reason the judgment of the trial court is reversed. We feel, however, that the evidence was not fully developed, and in the interest of justice the cause is remanded.