## REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Appellant,

v.

## Velma L. HEYWARD, Appellee.

### No. 5103.

Court of Civil Appeals of Texas, Eastland.

June 1, 1978.

Rehearing Denied and Supplemental Opinion June 29, 1978.

See also Tex., 536 S.W.2d 549.

Earle Cobb, Jr., Cobb, Thurmond & Bain, Inc., San Antonio, for appellant.

Oliver S. Heard, Jr., San Antonio, Thomas Goggan, Goggan & Cain, Austin, for appellee.

McCLOUD, Chief Justice.

This is a suit for accidental death benefits. The insured was intentionally shot and killed.

Velma L. Heyward, the named beneficiary of a group life insurance policy insuring the life of her husband, Bennie Heyward, sued the insurer, Republic National Life Insurance Company, seeking recovery of benefits under an accidental death rider to the policy. The policy provided for life insurance based upon the annual salary of the insured and accidental death benefits of $12,000 under the accidental death rider. The insurer paid the basic $3,000 life insurance proceeds to plaintiff, but refused to pay the additional $12,000 under the accidental death rider. Following a jury trial, judgment was entered for plaintiff for $12,000, the accidental death benefits, plus interest and penalty. Plaintiff was awarded attorney's fees of $65,000, but the judgment provided that if defendant did not appeal the cause, the judgment should be credited with $15,000. The judgment further provided that if defendant should appeal to the Court of Civil Appeals, but the case not carried by writ of error to the Supreme Court of Texas, then the judgment should be credited with the sum of $7,500. Defendant, Republic National Life Insurance Company, has appealed.

The instant controversy has heretofore been before our Supreme Court. *Heyward v. Republic National Life Insurance Company*, 527 S.W.2d 807 (Tex.Civ.App.—San Antonio 1975), aff'd, 536 S.W.2d 549 (Tex. 1976).

The controlling issues are whether the insured, Bennie Heyward, died solely and independently of all other causes from accidental means, and whether the insured was participating in or committing a felonious act at the time of his death.

The insured was intentionally shot and killed by Oscar Anderson. The insured and James Etta Anderson, mother of Oscar Anderson, were living together at the time of the killing. They had lived together for several years. During the same period of time, the insured also lived periodically with plaintiff. Both plaintiff and James Etta Anderson testified that they were each married by common law to the insured at the time of his death. Oscar Anderson lived with the insured and James Etta Anderson. On September 23, 1973, while the insured and Oscar Anderson were engaged in a fight at the home of the insured, Oscar Anderson obtained possession of insured's 357 magnum revolver and shot the insured five times. After shooting insured, Anderson took a knife and administered numerous deep cuts on the insured's body.

The accidental death rider in issue provides in part:

"If a person, while insured under this Section of the Group Policy, sustains an injury effected solely through external, violent and accidental means and as a result thereof, directly and independently of all other causes, suffers a loss specified below within ninety days following the date of such injury, the Company, subject to all provisions of the Group Policy, will pay

(a) the Principal Sum for loss of life;

. . . . .

Benefits shall not be payable for any loss to which a contributing cause is

. . . . .

(e) participation in or as the result of the commission of a felonious act."

Special Issues 1 and 2 were submitted and answered by the jury as follows:

"SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the death of Bennie Heyward on September 23, 1973 resulted from injuries through accidental means?

You are instructed that the test of whether injuries resulting in death is through 'accidental means' within the terms of an insurance policy is not to be determined from the viewpoint of the one who inflicts the injuries resulting in death, but rather from the viewpoint of the insured. If from his viewpoint his conduct was such that he should have anticipated that in all reasonable probability the other ·party would kill him, his death was not accidental; if from his viewpoint his conduct was not such as to cause him reasonably to believe that the other party would probably kill him, then his death was accidental.

Answer 'We do' or 'We do not'.

We, the Jury, answer: We do.

SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that a contributing cause of the occurrence in question between Bennie Heyward and Oscar Anderson that resulted in the death of Bennie Heyward was not his participation in or result of his commission of a felonious act?

You are instructed that in this case a 'felonious act' means committing an offense of assault with intent to commit murder if such person, with the intent to commit murder, attempts the use of unlawful violence upon another person or uses any threatening gesture showing in itself or by words accompanying it, an immediate intention, coupled with an ability to commit murder. 'Murder' means the voluntary killing of a person with malice aforethought, which is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief.

Answer 'It was' or 'It was not'.

We, the Jury, answer: It was not."

First, we note that defendant's first and second points of error, that the court erred in overruling its motions for "Instructed Verdict" and "Judgment N.O.V.", fail to comply with the requirements of Rule 418, T.R.C.P., that points of error "direct the attention of the court to the error relied upon." The points are too general. *Tindall v. Tacconelly*, 328 S.W.2d 909 (Tex. Civ.App.—San Antonio 1959, writ ref. n. r. e.). Furthermore, the grounds listed in defendant's motion for instructed verdict were not carried forward as assignments of error in its amended motion for new trial. The assignment of error merely states that the court erred in overruling defendant's motion for instructed verdict. Such inadequate assignment of error cannot form the basis for a proper point of error. *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960); *Tennell v. Esteve Cotton Company*, 546 S.W.2d 346 (Tex.Civ.App.—Amarillo 1976, writ ref. n. r. e.). However, after examining the statement and argument contained in defendant's brief relating to its first and second points of error, we will consider defendant's Point of Error No. 2, that the court erred in overruling its motion for judgment non obstante veredicto. *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943). Defendant argues under its first and second points of error that there is no evidence the death of the insured was caused solely and independently of all other causes by accidental means. We disagree.

The insured's death might be caused solely by accidental means even though it resulted from injuries intentionally inflicted by another. Our Supreme Court in the prior appeal of the instant case, *Republic National Life Insurance Company v. Heyward*, 536 S.W.2d 549 (Tex.1976), expressly approved the rule to be applied as stated in *Releford v. Reserve Life Insurance Co.*, 154 Tex. 228, 276 S.W.2d 517 (1955), wherein the court said:

". . . As stated in the *Hutcherson* case (*Hutcherson v. Sovereign Camp, W.O.W.*, 112 Tex. 551, 251 S.W. 491 (1923), the test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the

killing, but rather from the viewpoint of the insured. If from his viewpoint his conduct was such that he should have anticipated that in all reasonable probability his wife would kill him, his death was not accidental; if from his viewpoint his conduct was not such as to cause him reasonably to believe that she would probably kill him, then his death was accidental. This was the jury question under the facts in this case."

■ Oscar Anderson, his mother James Etta Anderson, and Oscar's sister and brother, Marcilee Anderson and Karl Hammond, testified concerning the events leading up to the shooting. These were interested witnesses and the jury was not bound by their testimony. *Praetorian Mutual Life Insurance Company v. Sherman*, 455 S.W.2d 201 (Tex.1970); *Aetna Life Ins. Co. v. Hagemyer*, 53 F.2d 636 (5th Cir. 1931). The jury could not, however, find the converse of such testimony in the absence of independent evidence to support such finding. *Briscoe v. Laminack Tire Service, Inc.*, 546 S.W.2d 695 (Tex.Civ.App.—Texarkana 1977, writ ref. n. r. e.); *USLIFE Title Insurance Company of Dallas v. Rossco, Incorporated*, 550 S.W.2d 419 (Tex.Civ.App.—Eastland 1977, writ ref. n. r. e.).

There is testimony that the insured, Heyward, and James Etta Anderson got into an argument at about 10:00 p. m. on September 23, 1973, at their home; Heyward "slapped" James Etta Anderson who had only recently been released from the hospital; Oscar's sister, Janice Anderson, saw Oscar at the store and told him Heyward had "jumped" on their mother; Oscar came home about midnight; Heyward and James Etta Anderson were in their bedroom; it was quiet at the time; Oscar knocked on the bedroom door; an argument between Oscar and Heyward ensued; Oscar went to his bedroom; Heyward followed with his 357 magnum stuck under his belt; Heyward attempted to call the police; the telephone was in Oscar's room; Heyward swung at Oscar; they began to scuffle; Heyward's 357 magnum was knocked out of his hand; Oscar and Heyward wrestled on

the floor for the gun; Oscar got the gun; Oscar started out the door; Heyward was getting up and coming toward Oscar; Oscar turned and shot Heyward; Oscar continued to shoot until the gun was empty; he then took out his knife and started cutting Heyward; the pathologist testified that Heyward was hit by five shots; three shots entered Heyward's back.

■ In considering defendant's "no evidence" point, all evidence must be considered in a light most favorable to plaintiff and every reasonable intendment deducible from the evidence is to be indulged in plaintiff's favor. *Douglass v. Panama, Inc.*, 504 S.W.2d 776 (Tex.1974).

At the commencement of the fight between Oscar and Heyward, Heyward—not Oscar—had the 357 magnum. Oscar was seventeen years old and had lived with Heyward since he was about five years old. Oscar testified he looked upon Heyward as his father. Even if we assume that Heyward was getting up and coming after Oscar, we do not feel that this establishes as a matter of law that Heyward, from his viewpoint, should have anticipated that in all reasonable probability Oscar would kill him. Oscar did not verbally warn Heyward that he would shoot him if he continued to advance. He fired no warning shot. The evidence is that as he started through the door he turned and shot the insured. Furthermore, the three shots in Heyward's back is some evidence from which the jury could reasonably infer that Heyward was not advancing on Oscar at the time of the shooting.

The cases cited by defendant are distinguishable. In *Stevenson v. Reliable Life Insurance Co.*, 427 S.W.2d 945 (Tex.Civ.App.—San Antonio 1968, no writ), the insured continued to advance in a threatening manner toward the muzzle of a pointed pistol even after repeated verbal warnings and warning shots were fired. Likewise, in *Perry v. Aetna Life Insurance Company of Connecticut*, 380 S.W.2d 868 (Tex.Civ.App.—Tyler 1964, writ ref. n. r. e.), the court held the trial court was justified in concluding that the insured should have anticipated

that in all reasonable probability he would be killed, after the deceased broke down two doors and forced his way into the house where his wife, who had filed for divorce, was standing with a gun in her hand, and the deceased continued to advance after being warned verbally and by warning shots. In *Spencer v. Southland Life Insurance Company*, 340 S.W.2d 335 (Tex.Civ. App.—Fort Worth 1960, writ ref'd), the insured was shot by an officer following a chase, after the insured pointed a shotgun at the officer who had twice warned the insured to put the gun away.

■ We hold the court did not err in overruling defendant's motion for judgment notwithstanding the verdict. We also hold the court did not err in submitting Special Issue 1. There is some evidence to support the submission and the jury's finding. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974). After considering all the evidence as required by *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), we hold the evidence is factually sufficient to support the jury's answer to Special Issue 1.

Defendant contends the court erred in submitting Special Issue 1 because the burden of proof is improperly placed on defendant and the issue as submitted constitutes a comment on the weight of the evidence. Defendant also urges the contract provides that accidental means must be the sole cause of death and Special Issue 1 does not limit the issue to sole cause nor does it include the words "solely" and "independently of all other causes".

■ The issue as submitted tracks the language approved by our Supreme Court in *Releford v. Reserve Life Insurance Company*, 154 Tex. 228, 276 S.W.2d 517 (1955). The issue properly places the burden on plaintiff to prove the death resulted from accidental means. It did not constitute a comment on the weight of the evidence. Rule 277, T.R.C.P. It has often been held in cases of this nature that the fact to be determined by the jury is whether the insured, from his viewpoint, should have anticipated that in all reasonable probability he would be killed. See *Life & Casualty*

*Insurance Company of Tennessee v. Martinez*, 299 S.W.2d 181 (Tex.Civ.App.—San Antonio 1957, no writ).

■ The evidence conclusively established that the insured died as a result of the wounds received. It was not necessary to include in Special Issue 1 the language "solely" and "independently of all other causes". The court is not required to submit an issue on an undisputed fact. Rule 272, T.R.C.P.; *Sullivan v. Barnett*, 471 S.W.2d 39 (Tex.1971).

■ Defendant next complains of the submission of Special Issue 2 and the related explanatory instruction. Defendant's objection that "felonious act" is defined incorrectly and contrary to law is too general. Also, we do not deem sufficient defendant's objection, "that the policy should be interpreted by the common every day meaning of the layman and that technical instructions by the Court should not be indulged." Rule 274, T.R.C.P. We think the trial court correctly defined felonious act in terms of the only felony raised by the evidence under the 1925 Texas Penal Code which was in effect at the time of the killing. The evidence raised two possible felonies: (1) assault with intent to commit murder pursuant to Article 1160, Vernon's Annotated Penal Code (1925); and, (2) assault with a prohibited weapon pursuant to Article 1151, Vernon's Annotated Penal Code (1925). Assault with a prohibited weapon is not applicable. Heyward was residing at 311 Vine Street, San Antonio, where he was killed, at the time in question, and his possession of the revolver on those premises was not unlawful. Article 484, Vernon's Annotated Penal Code (1925). Evidence that prior to the arrival of Oscar, Heyward was in his bedroom; that it was quiet; and, that Heyward attempted to call the police during the controversy, is some evidence to support the jury's finding that Heyward did not have the intent to murder Oscar Anderson. After considering all the evidence, we hold the evidence is factually sufficient to support the jury's answer to Special Issue 2. In re *King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Plaintiff introduced testimony of Heyward's character as a peaceable person as circumstantial evidence of his probable conduct at the time and place in question. The mode of proof of this character trait was testimony of the witness, Wilburn, that he was familiar with the reputation of the insured in the community for being a peaceful and law-abiding citizen, and that reputation was good. Having testified as to such reputation, Wilburn could be cross-examined regarding his knowledge of reputation. On cross-examination, the witness could be asked proper "have you heard" questions regarding matters likely to affect the insured's general reputation in the community. Defendant complains of the exclusion by the trial court of certain tendered cross-examination of Wilburn. The bill of exception shows that in the tendered cross-examination the witness was not asked "have you heard", but "*did you know* or had you heard". On direct examination, the witness did not testify as to his opinion of the character of the insured, nor to his conduct or specific good deeds. He testified only concerning the insured's general reputation. The questions asked by defendant, "did you know or had you heard", were improper. *Osborne v. State*, 518 S.W.2d 805 (Tex.Cr.App.1975); *De Grate v. State*, 518 S.W.2d 821 (Tex.Cr.App.1975). The appropriate rule was discussed by our Court of Criminal Appeals in *Webber v. State*, 472 S.W.2d 136 (Tex.Cr.App.1971) wherein the court said:

". . . The fact that the appellant had placed his general reputation in issue did not authorize the state in combating proof of good reputation to show specific acts of misconduct on his part nor did it authorize the state to make inquiry in such a manner as to show or assert the truth thereof that the appellant had been guilty of particular offenses of misconduct . . ."

2 McCormick and Ray, Texas Law of Evidence § 1495 (1956) states that a "party's character, where evidence thereof is received, cannot be proved by specific acts." See also: *International Security Life Insurance Company v. Melancon*, 463 S.W.2d 762 (Tex.Civ.App.—Beaumont 1971, writ ref. n. r. e.). The court did not err in refusing to admit the tendered cross-examination.

■ The defendant also complains of the court's refusal to permit its tendered cross-examination of plaintiff regarding the insured's reputation for being a peaceful and law-abiding citizen. Plaintiff at no time testified before the jury regarding the reputation of the insured. Defendant, however, in perfecting its bill of exception attempted to convert the plaintiff into a character witness and then impeach her. The cross-examiner may not transform, by his own questions, a witness who is not a character witness, into a character witness, in order to be able to ask "have you heard" questions. *Els v. State*, 525 S.W.2d 11 (Tex. Cr.App.1975).

■ Defendant urges that the court erred in excluding tendered testimony given by plaintiff outside the presence of the jury, that plaintiff had at one time entered into an agreement with James Etta Anderson to divide the proceeds of the insurance policy. At the time defendant attempted to show the agreement by the testimony of plaintiff, James Etta Anderson had not testified. As stated in *General Motors Corporation v. Simmons*, 558 S.W.2d 855 (Tex. 1977), the financial interest of parties and witnesses in the success of a party is a proper subject of disclosure by direct evidence or cross-examination. James Etta Anderson was not a party in the instant suit. Defendant called James Etta Anderson as its witness later in the trial, but did not ask her any questions regarding an agreement to divide the proceeds of the policy. Also, the defendant did not retender the excluded testimony after James Etta Anderson testified. The court correctly refused the tendered testimony at the time it was offered.

Special Issues 3, 4 and 5 were submitted and answered by the jury as follows:

"SPECIAL ISSUE NO. 3

What sum of money, if any, do you find from a preponderance of the evidence is a

reasonable fee for necessary services of the attorneys for Velma Heyward in representing her in this action through completion of the previous trial, the previous appeals, and this trial in the District Court?

Answer in dollars and cents, if any.

We, the Jury, answer: $50,000.00.

## SPECIAL ISSUE NO. 4

What sum of money, if any, do you find from a preponderance of the evidence is a reasonable fee for necessary services of the attorneys for Velma Heyward for the preparation and presentation of this case before the Court of Civil Appeals, in the event that an appeal be taken from the judgment of this case by the Defendant?

Answer in dollars and cents, if any.

We, the Jury answer: $7,500.00.

## SPECIAL ISSUE NO. 5

What sum of money, if any, do you find from a preponderance of the evidence is a reasonable fee for necessary services of the attorneys for Velma Heyward for the preparation and presentation of this case before the Supreme Court of Texas, in the event that an Application for Writ of Error is made from the decision of the Court of Civil Appeals?

Answer in dollars and cents, if any.

We, the Jury, answer: $7,500.00."

The awards of attorney's fees in Special Issues 3, 4 and 5 are grossly excessive. The more serious question is whether defendant has properly perfected a complaint that the awards by the jury are excessive, since defendant's points of error do much violence to Rule 418, T.R.C.P. Points touching upon the amount of attorney's fees are as follows:

"POINT OF ERROR NO. 5 – THE COURT ERRED IN SUBMITTING SPECIAL ISSUE NO. 3 FOR THE FOLLOWING REASONS:

    .   .   .   .   .   .   .   .   .   .   .   .   .

c. There was no evidence of what attorney's fees were necessary.

d. There was insufficient evidence of what attorney's fees were necessary.

e. The great weight and preponderance showed that the attorney's fees above $6,000.00 were unnecessary.

    .   .   .   .   .   .   .   .   .   .   .   .

g. The attorney entered into a contingent fee contract with Velma Heyward for one-half (½) of any sum recovered. She did not incur any liability for a reasonable fee.

h. To prove a reasonable fee, burden is on Plaintiff to show time spent. They did not do so.

i. Best evidence shows 159 hours spent by Defendant's attorneys. In absence of evidence by Plaintiffs as to time, fee should be limited to time proven or $7,900.00, plus 44 hours trial time, $2,200.00 or $10,100.00 TOTAL.

POINT OF ERROR NO. 6 – THE COURT ERRED IN SUBMITTING SPECIAL ISSUE NO. 4 IN THAT THE AWARDING OF SUCH FEES IS A DENIAL OF DUE PROCESS. (Germaine to Assignment No. 12 in Amended Motion for New Trial).

POINT OF ERROR NO. 7 – THE COURT ERRED IN SUBMITTING SPECIAL ISSUE NO. 5 IN THAT THE AWARDING OF SUCH FEES IS A DENIAL OF DUE PROCESS. (Germaine to Assignment No. 13 in Amended Motion for New Trial).

POINT OF ERROR NO. 8 – THE COURT ERRED IN AWARDING JUDGMENT FOR ATTORNEY'S FEES IN APPROXIMATELY SIX (6) TIMES THE AMOUNT INVOLVED IN LITIGATION. (Germaine to Assignment No. 16 in Amended Motion for New Trial)."

■ We have concluded after reviewing the statement, argument and authorities under defendant's points that defendant has perfected its complaint that the awards of attorney's fees in Special Issues 3, 4 and 5 are excessive. *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943).

■ Special Issue 3 asked the jury to find what would be a reasonable fee for necessary services through completion of the first trial, the previous appeals, and the instant trial in the district court. Five attorneys testified that $50,000, as found by the jury, would be a reasonable fee for such services. We are not bound by such testimony and will suggest a remittitur. *Southland Life Ins. Co. v. Norton,* 5 S.W.2d 767 (Tex.Com.App.1928). There was also expert testimony to support the jury's findings of $7,500 in Special Issues 4 and 5. We will suggest a remittitur.

Plaintiff's attorneys testified that they did not keep time records but after reviewing their file they estimated they had "put in" between 750 and 1,000 hours. The first trial was brief. It lasted "part of two days" and ended in a directed verdict for defendant. The San Antonio Court of Civil Appeals reversed and remanded, and the Supreme Court of Texas affirmed the intermediate court.

Article 3.62 of the Insurance Code provides:

"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy."

The court in *Southland Life Ins. Co. v. Norton,* 5 S.W.2d 767 (Tex.Com.App.1928) stated:

"The above statute provides for a reasonable attorney fee for the prosecution and collection of such loss. This means such a fee as would be reasonable for a litigant himself to pay his own attorney for prosecuting the case, and not a speculative or contingent fee based upon the uncertainty of the litigation. As applied to the case at bar, it is the purpose and object of the statute to allow the plaintiff a reasonable sum for a competent attorney, or firm of attorneys, to represent him in the case and prosecute the litigation, and the statute does not contemplate a fee for more than one attorney or firm of attorneys. . . .

.    .    .    .    .

. . . the Court of Civil Appeals has the right to look to the entire record in the case before them, and to view the matter in the light of the testimony, the record before them, the amount in controversy, and their own common knowledge and experience as lawyers and judges."

■ Attorney's fees must be reasonable under the particular circumstances of the case and bear some reasonable relationship to the amount in controversy. *Union National Life Insurance Company v. Reese,* 476 S.W.2d 928 (Tex.Civ.App.—Houston (14th Dist.) 1972, writ ref. n. r. e.). The amount in controversy in the instant case is $12,000 plus penalty and interest. There can be no doubt but that plaintiff was well represented. The record reflects extremely competent representation at both the trial and appellate level. We must conclude, however, that if plaintiff's attorneys worked between 750 and 1,000 hours on this $12,000 lawsuit, then they overproduced and defendant should not be held liable for such overproduction. *McFadden v. Bresler Malls, Inc.,* 548 S.W.2d 789 (Tex.Civ.App.—Austin 1977, no writ). As observed by the court in *Capitol Life Insurance Company v.*

*Rutherford*, 468 S.W.2d 535 (Tex.Civ.App.—Houston (1st Dist.) 1971, no writ), there are "career cases" where the amount in controversy will not justify the fee that would be required to fully compensate the attorneys involved. It is true, as urged by plaintiff, that the court in *Union National Life Insurance Company v. Reese*, supra, permitted an attorney's fee which was disproportionate to the amount in controversy, but the court carefully pointed out that the defendant insurance company asserted numerous dubious or spurious defenses which prolonged payment of a claim which obviously should have been paid. This is not true in the instant case. The defendant raised very legitimate defenses in view of the circumstances surrounding the death of its insured. The policy liability issue is close. We are not confronted with the assertion of a spurious defense.

We hold that the awards of attorney's fees in Special Issues 3, 4 and 5 are excessive.

Since the only reason for reversal is the excessiveness of the attorney's fees, we are required to indicate the amount by which we consider the fees excessive and give plaintiff a reasonable time within which to file a remittitur of such excess. Rule 440, T.R.C.P.; *Carter v. Texarkana Bus Company*, 156 Tex. 285, 295 S.W.2d 653 (1956). We hold that Special Issue 3 is excessive in the sum of $35,000; Special Issue 4 is excessive in the sum of $4,500; and, Special Issue 5 is excessive in the sum of $5,500.

Defendant's liability for the policy proceeds, the statutory penalty, interest and costs, other than the attorney's fees, is separable and has been correctly tried. We affirm that part of the judgment. Rule 434, T.R.C.P.; *Huffington v. Upchurch*, 532 S.W.2d 576 (Tex.1976). The error affects only the matter of attorney's fees which is separable. *Great American Reserve Insurance Company v. Britton*, 406 S.W.2d 901 (Tex.1966). We sever that part of the judgment based upon Special Issues 3, 4 and 5 awarding plaintiff $65,000 in attorney's fees. If plaintiff files in this court a remittitur of $45,000 in writing within 15 days from the date of this opinion, then this severed portion of the judgment will be reformed and affirmed. The $45,000 remittitur shall reflect remittitur of $35,000 as to Special Issue 3; $4,500 as to Special Issue 4; and $5,500 as to Special Issue 5. If remittitur is not so filed, then this severed portion of the judgment awarding attorney's fees will be reversed and remanded for a new trial.

Defendant's points of error not specifically discussed have been considered and they are overruled.

The judgment is affirmed in part and conditionally affirmed in part.

### SUPPLEMENTAL OPINION

On June 1, 1978, we stated in our opinion in this cause that if plaintiff did not file a remittitur of $45,000 within 15 days from such date, that portion of the judgment of the trial court awarding plaintiff attorney's fees of $65,000 would be reversed and remanded.

Plaintiff has failed to file the suggested remittitur within the time indicated, therefore, the severed portion of the judgment awarding plaintiff $65,000 attorney's fees is reversed and such severed cause of action is remanded for a new trial.