**GREEN TREE ACCEPTANCE,
INC., Appellant,**

v.

**Gene COMBS, Appellee.**

**No. 04–87–00073–CV.**

Court of Appeals of Texas,
San Antonio.

Jan. 20, 1988.

Rehearing Denied Feb. 17, 1988.

Kim Brightwell, Austin, for appellant.
Andrew Cline, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CHAPA, JJ.

## OPINION

BUTTS, Justice.

Gene Combs was discharged as an employee of Green Tree Acceptance, Inc. When Combs subsequently attempted to exercise stock options, Green Tree refused to comply, justifying its refusal upon the terms of the option contracts, specifically that Combs was discharged for "gross and willful misconduct." Combs sued and Green Tree appeals from an adverse verdict.

Green Tree raises twelve points of error which we group into three main areas: first, that the trial court improperly submitted the critical issues of the case. Second, that Combs' conduct amounted to gross and willful misconduct as a matter of law. Third, that there was insufficient evidence to support the award of damages in this case.

Green Tree is in the business of providing financing to qualified purchasers who buy a mobile home from an approved dealer. Normally Green Tree does not hold the financing contract, but instead packages large numbers of them, selling them to investors in the secondary market.

As the manager for Green Tree's San Antonio region, Combs was responsible for entering into financing contracts, servicing those contracts, repossessing and reselling homes when a contract was in default, and generally representing Green Tree in dealing with customers, dealers, and others. Green Tree compensated its regional managers based on performance and profitability of their operations.

Combs received two stock options from Green Tree, a non-qualified stock option and an incentive stock option. Under these agreements Combs' rights were restricted if he was dismissed from employment under certain circumstances. The pertinent provisions of the non-qualified stock option read:

In the event that employees shall cease to be employed by the company or its subsidiaries for cause including, without limitation, by reason of the employee's *gross and willful misconduct* during the course of the employee's employment, wrongful appropriation of company funds or the commission of a gross misdemeanor or felony, this option shall be completely terminated as of the date of the misconduct. (emphasis added).

The incentive stock option agreement provided:

In the event that employee shall cease to be employed by the company or its subsidiaries by reason of the employee's *gross and willful misconduct* during the course of the employee's employment, including but not limited to wrongful appropriation of company funds or the commission of a gross misdemeanor or felony, this option shall be completely terminated as of the date of the misconduct. (emphasis added).

After his termination Green Tree refused to allow Combs to exercise his two stock options on the ground that he was terminated for "gross and willful misconduct," specifically, for violating company policy.

The incident that led to Combs' termination involved the resale of a repossessed mobile home with no down payment in violation of a company policy that required a down payment from the purchaser. The sales contract was drawn to reflect the sales price of $12,200.00 and a down payment of $700.00. In fact, no down payment exchanged hands and the mobile home was actually purchased for $11,500.00 with 100% of that amount financed.

At trial Green Tree sought to prove that Combs' behavior not only violated company policy but also federal law, and amounted to the commission of a felony. Green Tree argued that this was gross and willful misconduct under the terms of the option agreements.

Green Tree alleges in its first two points that the trial court erred in submitting Special Issue No. 1 to the jury without a definition or an instruction on "gross and willful misconduct." The trial court submitted the following special issue to the jury:

## Question No. 1

Do you find from a preponderance of the evidence that the action of the plaintiff, Gene Combs, in connection with the *Clay* transaction constituted gross and willful misconduct?

Answer: "We do" or "We do not"

We, the jury, answer: *We do not*

The trial court did not define "gross and willful misconduct," nor did it give any explanatory instruction, though one was requested by Green Tree.

The general rule is that the trial court has considerable discretion in deciding what definitions and instructions are necessary and proper in submitting issues to the jury, and the standard of review is that of abuse of discretion. TEX.R.CIV.P. 277; *Charter Oak Fire Ins. Co. v. Taylor*, 658 S.W.2d 227, 228–229 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Rendon v. Texas Employers' Insurance Association*, 599 S.W.2d 890, 896 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Absent a showing of a denial of a party's rights which was reasonably calculated to cause and probably did cause rendition of an improper verdict in the case, no abuse of discretion on the part of the trial court is shown. *Hamblet v. Coveney*, 714 S.W.2d 126, 129 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

A court must define legal and other technical terms to the jury and must submit explanatory instructions which are proper to enable the jury to render a verdict. *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 628 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Johnson v. Whitehurst*, 652 S.W.2d 441, 447 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Ordinarily the trial court is required to define or explain only those words or phrases given a distinctive meaning by law, and words having no special legal or technical meaning apart from their ordinary usage need not be defined. *Taylor v. Lewis*, 553 S.W.2d 153, 159 (Tex.Civ.App.—Amaril-

lo 1977, writ ref'd n.r.e.); *Miller v. Watson,* 257 S.W.2d 839, 841 (Tex.Civ.App.—Dallas 1953, writ ref'd n.r.e.).

■ In this case the words "gross and willful misconduct" as set out in the contracts are words of ordinary meaning and are readily understood by the average person. They did not require a technical legal definition in order for the jury to be able to understand them and give them meaning in arriving at their verdict. *See, Rey v. State,* 512 S.W.2d 40, 44 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.), *cert. denied,* 421 U.S. 926, 95 S.Ct. 1651, 44 L.Ed.2d 83 (1975). In addition, copies of the stock options with certain acts specified as gross and willful misconduct were in evidence before the jury. Points of error one and two are overruled.

■ Green Tree next complains that the trial court erred in refusing to submit its second request for instruction on "gross and willful misconduct." Appellant sought submission of the following instruction in connection with Special Issue No. 1:

> In connection with this special issue, you are further instructed that a person commits gross and willful misconduct if he wrongfully appropriates company funds.

The two stock option agreements refer to misappropriation of company funds. The non-qualified stock option agreement provides "... by reason of the employee's gross and willful misconduct during the course of the employees employment, wrongful appropriation of company funds or the commission of a gross misdemeanor or felony ...," whereas the incentive stock option agreement provides:

> ... in the event that employees shall cease to be employed by the company or its subsidiaries by reason of the employees gross and willful misconduct during the course of employee's employment, including but not limited to wrongful appropriation of company funds or the commission of a gross misdemeanor or felony ...

Copies of both stock option agreements were admitted into evidence for the jury's consideration. Therefore, the requested instruction was not necessary. The trial court properly refused the request. *See, Hamblet v. Coveney, supra* at 129. The third point of error is overruled.

■ Green Tree argues that gross and willful misconduct included the commission of a gross misdemeanor or felony, and sought to show that Combs' acts amounted to the commission of a felony. In this connection it urges that the trial court erred in refusing to read 18 U.S.C. §§ 1 and 1001 to the jury and in denying Green Tree's request for an instruction on "gross and willful misconduct" based on the felony provisions of the code.

The federal statute provides that it is a felony to knowingly and willfully falsify a material fact in any matter within the jurisdiction of a federal agency. 18 U.S.C.A. § 1 (1969 and Supp. 3 1986), § 1001 (1976). Outside the presence of the jury, it was requested the court to take judicial notice of 18 U.S.C. §§ 1 and 1001. The court did take judicial notice of the statutes, but ruled that Green Tree could not read them to the jury or question Combs about them, nor was it allowed to refer to the fact that Combs' conduct might constitute a felony under these statutes. On taking notice the court made it clear that it was not acknowledging that the statute had any application to this particular case.

The court impliedly ruled that the word "commission" contained in the term "the commission of a gross misdemeanor or felony" was not vague or ambiguous but referred to a conviction for a gross misdemeanor or felony, or meant that an actual violation of the statute occurred. Green Tree argues that in civil cases the non-existence of a criminal conviction is irrelevant. *Republic National Life Insurance Company v. Heyward,* 568 S.W.2d 879 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.). The reliance on *Republic* is misplaced. *Republic* was an insurance case in which an accidental death rider provided in part that benefits would not be payable for any loss for which a contributing cause was "participation and/or as the result of the commission of a felonious act." *Id.* at 881. The distinction is the addition of the

word "participation." Because the accidental death rider provided for participation in, as well as the commission of, a felonious act and because there was some evidence that the acts in question were covered by and in violation of the statute, the trial court had no choice but to submit the special issue and the explanatory instruction. *Id.* at 884.

More important in the case at hand is the fact that Green Tree failed to adduce evidence that Combs' activities were within a jurisdiction of any department or agency of the United States. The only evidence in this regard was the testimony of Boyum, the Chief Financial Officer of Green Tree, who testified that in February, 1985, Green Tree was regulated by the Home Loan Bank Board.

Q. In February, 1985, at the time when the transaction was done with Mr. Clay, was Green Tree regulated by the Federal Home Loan Bank Board?

A. [Mr. Boyum] Yes.

Q. And why is that?

A. [Mr. Boyum] At that time, approximately 75% of the stock of Green Tree was held by a federally chartered savings and loan, Midwest Federal Savings and Loan of Minneapolis.

Q. Mr. Boyum, ... tell the jury the significance of what it means to be regulated by the Federal Home Loan Bank Board.

A. Well, in our business, we are regulated by many bodies—the FDC, FCC, Federal Home Loan Banking Board, IRS, various state federal regulatory institutions. We are in the credit business, extending credit to consumers and dealers. The regulatory bodies, essentially, you have to operate under their regulations. You have to operate under their authorities. You have to get licensed to operate.

Typically, they have auditors or investigators who regularly come into your business establishments once a year, or every other year, and examine your records and your transactions to see that you are conducting your business properly within their authority that they had granted you to operate in their jurisdictions.

Green Tree failed to show the specific applicability of regulation by any federal agency to any particular act of Combs in the Clay transaction, or that any action of Combs was a matter within the jurisdiction of any department or agency of the United States subject to the provisions of 18 U.S.C. There was no criminal violation shown. Points four and five are overruled.

■ In points of error six, seven and eight it is argued that the trial court erred in denying a motion for judgment notwithstanding the verdict and for new trial because Combs actions constituted gross and willful misconduct as a matter of law and the jury's answer to Special Issue No. 1 was contrary to the overwhelming weight and preponderance of the uncontroverted evidence.

It is clear that Combs violated company policy by accepting a finance contract with no down payment. It may be possible to characterize his behavior as falsification of a contract. Green Tree argues that the evidence shows Combs' conduct amounted to a violation of a felony statute, specifically 18 U.S.C.A. § 1001 as a matter of law. We do not agree. The trial court correctly denied the motion for judgment n.o.v.

While the complaint is essentially that the actions in this case amounted to "gross and willful misconduct" as a matter of law, no Texas authority is cited for this proposition. Instead a Maryland case holding that an employee's absenteeism and tardiness constituted "gross misconduct" within the meaning of that State's unemployment insurance law is cited. *Watkins v. Employment Security Administration,* 266 Md. 223, 292 A.2d 653 (1972). *Watkins* interprets the meaning of a term in a special statute in another state and is not applicable in the case at hand.

Whether or not Combs committed "gross and willful misconduct" was properly an ultimate fact issue for the jury in this case. The jury found that the appellee did not commit "gross and willful misconduct." Such finding was not contrary to the over-

whelming weight and preponderance of the evidence since "gross and willful misconduct" had not been conclusively established as a matter of law. Points six, seven and eight are overruled.

The last four points look to the trial court's submission of issues as to valuation of the stock options without designating a date on which the value should be established. It is argued that a new trial should have been granted because there was legally insufficient evidence to support the jury's valuations of the stock options. Specific complaint of the submission of Special Issues No. 4 and 5 is made:

Question No. 4

What do you find from a preponderance of the evidence to be the value of the plaintiff, Gene Combs', non-qualified stock option?
Answer in dollars and cents, if any.
We, the jury, answer: $ 14,650.00.

Question No. 5

What do you find from a preponderance of the evidence to be the value of the plaintiff, Gene Combs', incentive stock option?
Answer in dollars and cents, if any.
We, the jury, answer: $ 6,875.00.

Green Tree objected to the submission of these issues because they failed to specify a date when values should be determined. Green Tree argues that the plaintiff never offered evidence of a specific date but concedes that it appears the jury valued the stock options as of June 4 or 5, 1985.

It is true that there is no evidence that Combs attempted to exercise his stock options on a specific date. His testimony was that he gave the completed stock option forms and his expense report of April 1985 to Stan Boskovich to send to the corporate offices. Combs further testified that he received a check from Green Tree in payment of his April 1985 expense report dated June 6, 1985. On cross examination, Combs stated he recalled that he sent the stock options forms to the home office in late May, and planned to call about them the first part of June.

Boyum, a former Green Tree supervisor, testified that the expense check was sent to Combs on June 6, 1985, and that Green Tree received Combs' April expense report on June 4, 1985. In addition, Boyum identified a NASDAQ System Report on Green Tree showing the price of appellant's stock on every day for June, 1985. This stock report was admitted into evidence for the jury to consider. In addition, Boyum testified regarding the price of the stock on June 1, 1985 through June 10, 1985.

The general rule is that damages must be established with reasonable certainty, but failure to establish the exact amount of damages when it is impossible to ascertain the exact amount is no basis for denying recovery. *Hamblet v. Coveney*, 714 S.W. 2d 126, 132 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Based on the above testimony and evidence, Combs established his damages with reasonable certainty. The evidence was sufficient to support the jury's answers to Special Issues 4 and 5. Therefore, the trial court did not err in refusing to grant appellant's motion for a new trial on these points. Appellant's points of error nine, ten, eleven and twelve are overruled.

The judgment is affirmed.