ARGONAUT INSURANCE COMPANY, Appellant,

v.

ABC STEEL PRODUCTS CO., INC., d/b/a ABC Doors, Appellee.

No. 8648.

Court of Civil Appeals of Texas, Texarkana.

April 30, 1979.

Rehearing Denied May 29, 1979.

James H. Baumgartner, Jr., Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellant.

David E. Bird, Bedsole & Bird, Dallas, for appellee.

CORNELIUS, Chief Justice.

Argonaut Insurance Company appeals from a judgment rendered against it in favor of ABC Steel Products Co., Inc.

ABC agreed to sell and install steel warehouse doors to C. T. Lambert & Associates, Inc., a general contractor, for use in the construction of a mini-warehouse project in Richardson, Texas. Argonaut, pursuant to Tex.Rev.Civ.Stat.Ann. art. 5472d (Supp. 1978–1979), executed a statutory payment bond for Lambert which guaranteed the payment of all claims for labor and materials furnished Lambert in the construction of the project. ABC and Lambert's contract provided for a price of $133.34 per door. The contract further stipulated that Lambert would have a "25% cash discount for payment by 15th of month after installation (making your net discounted price $100.00 per door incl. applicable taxes)." ABC furnished and installed the doors as it agreed to do in the contract, but Lambert failed to pay for them. ABC then perfected its claim against Argonaut pursuant to the provisions of the payment bond it had made for Lambert. Argonaut tendered ABC the sum of $10,752.92, which represented only the net discounted price of $100.00 per door for the doors installed, plus interest and attorneys' fees accruing to the date of the tender. ABC refused the tender on the ground it was entitled to the full contract price for the doors, rather than the discounted price, and it then filed suit against Argonaut and Lambert. The case first went to trial before the court, but after a day and a half a mistrial was declared. The second trial was to a jury which answered special issues to the effect that:

(1) The agreed price of the doors was $133.34 each unless payment was

made on or before the 15th day of the month following installation, in which event the price would be discounted 25% (Special Issue No. 1).

(2) The fair market value of the doors installed at the time of installation was $110.00 per door (Special Issue No. 3).

(3) The 25% discount did not constitute interest (Special Issue No. 4).

(4) ABC was entitled to the sum of $16,000.00 as reasonable and necessary attorneys' fees (Special Issue No. 2).

The district court disregarded the jury's finding that the fair market value of the doors was $110.00 each and rendered judgment for ABC for $133.34 for each door furnished, plus interest and attorneys' fees as found by the jury. Lambert did not appeal.

Argonaut's principal contention on appeal is that, for the purpose of measuring its liability as surety for Lambert, the value of the doors was the discounted price, and that the offer of that amount to ABC constituted a lawful and sufficient tender which precluded an award for interest accruing after that date or for attorneys' fees incurred by ABC in bringing suit on its claim.

■■■ In the absence of contractual provisions to the contrary, a surety's liability is measured by the liability of the principal. *O'Neil Engineering Co. v. First National Bank,* 222 S.W. 1091 (Tex.Com.App.1920, holding approved); *W. T. Rawleigh v. Sherley,* 165 S.W.2d 465 (Tex.Civ.App. Dallas 1942, writ dism'd); *Girard Fire & Marine Insurance Co. v. Koenigsberg,* 65 S.W.2d 783 (Tex.Civ.App. Dallas 1933, no writ); 53 Tex.Jur.2d Suretyship, Sec. 25, p. 590; 74 Am.Jur.2d Suretyship, Sec. 25, p. 28; 72 C.J.S. Principal and Surety § 92 p. 572. The surety is bound for the debt, default or obligation of the principal. *Arceneaux v. Price,* 468 S.W.2d 473 (Tex.Civ.App. Austin 1971, no writ). By the express terms of its contract with ABC, Lambert was obligated to pay the sum of $133.34 per door unless it made payment within fifteen days of installation. When payment was not made within that time, Lambert's obligation became

fixed at $133.34 per door. ABC then had a valid claim for that amount, and upon Lambert's failure to pay the same, Argonaut became bound to do so. *O'Neil Engineering Co. v. First National Bank,* supra; *W. T. Rawleigh v. Sherley,* supra.

■■■ Argonaut advances several reasons to support its argument that the legal principals just enunciated should not govern this case. One is that under Article XVI, Sec. 37 of the Texas Constitution, which provides that mechanics, artisans and material men shall have liens for ". . . the value of their labor . . . or material . . .", the reasonable or fair market value of the materials determines the extent of the supplier's lien rather than the contract price. One answer to that contention is that no lien is involved here. ABC is not seeking to perfect or enforce a lien against Lambert or against the owner of the improvements. It is seeking to recover from Lambert's surety the contract price of the materials it furnished. As Lambert was obliged to pay ABC $133.34 per door, and Argonaut was liable for the debt of its principal, it was obligated to pay that price for the doors. The payment bond is intended as protection for the material men in lieu of a lien. *Trinity Universal Insurance Company v. Barlite, Inc.,* 435 S.W.2d 849 (Tex.1968). We further observe that ABC, as a subcontractor, was not entitled to a constitutional lien under the provisions of Article XVI, Sec. 37. *Da-Col Paint Mfg. Company v. American Indemnity Company,* 517 S.W.2d 270 (Tex.1974); *Trinity Universal Insurance Company v. Barlite, Inc.,* supra; *First National Bank v. Lyon-Gray Lumber Co.,* 194 S.W. 1146 (Tex.Civ.App. Texarkana 1917), aff'd, 110 Tex. 162, 217 S.W. 133, aff'd sub nom. *Lecountour Bros. Stair Mfg. Co. v. Lyon-Gray Lumber Co.,* 110 Tex. 177, 217 S.W. 136 (1919). Argonaut also argues that the language of the statute and the language of its bond, both of which make the surety's liability conditional upon the failure of the principal to promptly pay the material men, should be interpreted to mean that the surety is liable only for the "prompt payment price", which

in this case would be what the principal would have owed for the doors had he paid for them within fifteen days, i. e., the discounted price. We disagree. That language simply renders the surety liable if the principal fails to promptly pay. It does not restrict the surety's liability to a discounted price for which the principal could have qualified, but did not.

■ It is also contended that the "relation back doctrine" which applies in Texas to mechanic's liens, and the provisions of the lien statutes to the effect that an indebtedness shall be considered to have accrued on the 10th of the month following the furnishing of the materials, require that Argonaut's liability be limited to the cost of the doors if paid for by the 10th of the month after installation. We cannot accept that proposition. The relation back doctrine merely determines the priority of the liens which may be filed. *University Savings & Loan Association v. Security Lumber Co.*, 423 S.W.2d 287 (Tex.1967). And the accrual dates included in the lien statutes are simply for the purpose of setting the dates from which the lien notices and filing requirements shall run.

Under its payment bond Argonaut was obligated to pay what its principal owed for the materials furnished. As Lambert did not entitle itself to the discount for prompt payment, it became liable for the full contract price. Upon Lambert's failure to pay that price, Argonaut was bound to do so, and consequently its tender of an amount less than what was due was ineffectual. 55 Tex.Jur.2d Tender, Sec. 9, p. 220 and cases cited.

The appeal also asserts that the district court improperly disregarded the jury answer which found that the fair market value of the doors was $110.00 each. The construction contract between the landowner and Lambert provided for a "turn-key" price of $201,000.00. In another section the contract provided that any extras or additional work could "be figured on a unit cost" as set forth in a schedule. Included in the schedule was "8 ° × 8 ° doors, @ $110.00 each."

■ The trial judge correctly disregarded the jury's finding. Regardless of the unit price stipulated by the owner and the general contractor, the price which the general contractor agreed to pay ABC was $133.34 per door unless the discount was earned. Any other price or value was immaterial in determining the surety's liability for the debt of its principal.

The point is raised that there is no evidence or insufficient evidence to support the jury's finding that the 25% discount did not constitute interest. First, it should be noted that this issue was one on which Argonaut had the burden. Therefore, it cannot successfully attack the jury's finding by showing that it is not supported by sufficient evidence. It must demonstrate that the 25% discount, as a matter of law, constituted interest.

■ Tex.Rev.Civ.Stat.Ann. art. 5069– 1.01 provides that interest is the compensation allowed by law for the use or forbearance or detention of money. However, a seller of products may lawfully exact one price for his goods if they are paid for in cash or payment is made promptly, and he may demand a larger price if the sale is for credit or the cash payment is delayed, and the difference is not interest. *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249 (Tex.Civ.App. San Antonio 1978, ref. n. r. e.); *Avant v. Gulf Coast Investment Corporation*, 457 S.W.2d 134 (Tex.Civ.App. Dallas 1970, no writ); *National Bond & Investment Co. v. Atkinson*, 254 S.W.2d 885 (Tex. Civ.App. Amarillo 1952, writ dism'd); *Rattan v. Commercial Credit Co.*, 131 S.W.2d 399 (Tex.Civ.App. Dallas 1939, writ ref'd); 58 Tex.Jur.2d Usury, Sec. 12, p. 79. If the sale is a true credit sale, the difference in the sales price is usually termed a "time price differential." Tex.Rev.Civ.Stat.Ann. art. 5069–6.01, et seq; *Anquiano v. Jim Walter Homes, Inc.*, supra; *National Bond & Investment Co. v. Atkinson*, supra. If, as here, the sale is not a retail credit sale, but is a commercial transaction on open account, and the price is reduced for prompt payment or in consideration of volume pur-

chases, the difference in price is termed a "discount" or "trade discount." *Tatelbaum v. Chertkof,* 212 Md. 475, 129 A.2d 680 (1957); *Benner Tea Company v. Iowa State Tax Commission,* 252 Iowa 843, 109 N.W.2d 39 (1961); *Walsh-Anderson Company v. Keller,* 139 Mont. 210, 362 P.2d 533 (1961); 26A C.J.S. Discount, pp. 973, 975. Unless such a discount is a sham or is otherwise used for fraud or collusion, it does not constitute interest. Argonaut produced considerable evidence in its attempt to prove that the reduced price here was a sham and actually constituted interest rather than a legitimate discount, but the evidence was certainly not such as would compel such a conclusion as a matter of law.

Argonaut next complains of the trial court's failure to grant its motion for new trial on grounds of jury misconduct. The motion was supported by the affidavits and testimony of two jurors to the effect that an unidentified juror stated during the jury's deliberations that he personally receives invoices annually totaling millions of dollars, and that a cash discount of 25% is not unusual. Other testimony adduced at the hearing, however, reveals that several of the jurors promptly rebuked the juror who made the comment, and the foreman admonished the other jurors not to consider the remark because they were not allowed to go into such matters. No further discussion or comment upon the subject was had after the rebukes and the admonishment, even though at least five more votes were thereafter taken.

Misconduct of the jury is not grounds for a new trial unless it is established that (1) the improper act in fact occurred; (2) it was material; and, (3) the misconduct probably resulted in injury to the complaining party. Tex.R.Civ.P. 327; *Barrington v. Duncan,* 140 Tex. 510, 169 S.W.2d 462 (1943); *English v. American & Foreign Ins. Co.,* 529 S.W.2d 810 (Tex.Civ. App. Texarkana 1975, no writ). The complaining party has the burden on each of those issues. *St. Louis Southwestern Railway Company v. Gregory,* 387 S.W.2d 27 (Tex.1965); *City of Houston v. Quinones,*

142 Tex. 282, 177 S.W.2d 259 (1944). Whether the act alleged to be misconduct actually occurred is a question of fact, and if the evidence is conflicting, the express or implied finding of the trial court thereon is ordinarily taken as final. *Barrington v. Duncan,* supra; *English v. American & Foreign Ins. Co.,* supra. Whether the act constituted misconduct, and if so, whether it was material and probably resulted in injury, are questions of law to be determined by the trial court initially and by the appellate court ultimately from a consideration of the record as a whole. *Barrington v. Duncan,* supra; *Texas Employer's Insurance Association v. Waldon,* 392 S.W.2d 509 (Tex.Civ. App. Tyler 1965, writ ref'd n. r. e.). Findings of fact and conclusions of law were not requested or filed. In those circumstances it will be presumed that the trial court found all controverted fact issues against the complaining party. *F L R Corporation v. Blodgett,* 541 S.W.2d 209 (Tex.Civ.App. El Paso 1976, writ ref'd n. r. e.); *Brungs v. Consolidated Plan Service, Inc.,* 529 S.W.2d 79 (Tex.Civ.App. San Antonio 1975, writ ref'd n. r. e.). Considering all of the circumstances, and especially the evidence that the juror's comment was promptly rebuked and the other jurors admonished not to consider it, we conclude that probable injury has not been shown and that the trial court did not abuse his discretion in his refusing to grant a new trial.

Finally, Argonaut asserts that the jury's award to ABC for attorneys' fees is excessive. We agree.

This cause has been tried twice, once before the court for a day and a half, after which the court declared a mistrial, and again for approximately two and a half days before a jury. ABC was represented throughout the proceedings by two firms acting through three attorneys. Testimony was adduced that the attorneys spent 130 hours preparing the case for trial the first time and then spent an additional 200 or more hours on the case between the first and second trial. On the basis of this testimony the jury awarded $16,000.00 as attorneys' fees.

■ Attorneys' fees, where recoverable by law, must be reasonable under the particular circumstances of the case and must bear some reasonable relationship to the amount in controversy. *Republic National Life Ins. Co. v. Heyward,* 568 S.W.2d 879 (Tex.Civ.App. Eastland 1978, writ ref'd n.r.e.); *Union National Life Insurance Company v. Reese,* 476 S.W.2d 928 (Tex.Civ.App. Houston 14th Dist.1972, writ ref'd n. r. e.). The fee should be only that which would be reasonable for a litigant himself to pay his own attorney, and it is not intended that the litigant should have more than one firm of attorneys representing him. *Southland Life Insurance Co. v. Norton,* 5 S.W.2d 767 (Tex.Com.App.1928, holding approved). Although the amount of attorneys' fees is a question of fact for the jury, the trial or appellate court has the duty to reduce the fee awarded if it is excessive. *Southland Life Insurance Co. v. Norton,* supra; *Capitol Life Insurance Company v. Rutherford,* 468 S.W.2d 535 (Tex. Civ.App. Houston 1st Dist.1971, no writ). With regard to excessiveness, attorneys' fees are in the same category as general awards of damages. 17 Tex.Jur.2d Damages, Sec. 20, p. 100; Sec. 345, p. 420. To require a remittitur in such cases, it is not necessary to find that the jury was influenced by passion or prejudice or by any other improper motive. See *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959). In determining whether the award is excessive, the reviewing court is entitled to look at the entire record and to view the matter in the light of the testimony, the amount in controversy, the nature of the case, and our own common knowledge and experience as lawyers and judges. *McFadden v. Bresler Malls, Inc.,* 548 S.W.2d 789 (Tex.Civ.App. Austin 1977, no writ); *Southland Life Insurance Co. v. Norton,* supra; *Union National Life Insurance Company v. Reese,* supra; *Capitol Life Insurance Company v. Rutherford,* supra. The amount in controversy here was $13,093.75. See *Bourn v. Gray,* 144 S.W. 356 (Tex.Civ.App. El Paso 1912, no writ); 15 Tex.Jur.2d Courts, Sec. 70, p. 505. Total trial time was approximately four days. The greater portion of the preparation was undoubtedly done prior to the first trial unless it was unnecessary repetition. ABC was certainly well represented, but if its attorneys spent 340 hours on this case, the case was overworked. See *Republic National Life Ins. Co. v. Heyward,* supra; *McFadden v. Bresler Malls, Inc.,* supra. In our judgment the award of attorneys' fees is excessive by $6,000.00. If within fifteen days of the filing of this opinion appellee shall remit the sum of $6,000.00, the judgment below will be reformed and affirmed; otherwise, it will be reversed and remanded.

IT IS SO ORDERED.