Genevieve K. SPRUANCE et al., Appellants,

v.

William NORTHWAY, Jr., Appellee.

No. 6200.

Court of Civil Appeals of Texas, Waco.

May 29, 1980.

Rehearing Denied June 26, 1980.

Richard H. Kelsey, Kelsey, Wood, Gregory & Banks, Denton, Banks M. Smith, Banks & Banks, Emerson Banack, Jr., Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellants.

Robert Lee Bobbitt, Jr., James L. Drought, Brite, Drought, Bobbitt & Halter, San Antonio, for appellee.

## OPINION

McDONALD, Chief Justice.

This is a will contest. Alta L. Kerr died January 9, 1978. Appellants filed her August 22, 1974 will for probate in the County Court of Bexar County. Appellee, a grandchild of the deceased, filed an opposition to the 1974 will alleging a specific insane delusion as a lack of testamentary capacity; and also filed for probate a will of the deceased dated March 9, 1971.

Appellants opposed the 1971 will alleging the 1971 will was revoked by the revocation clause contained in the 1974 will.

Trial was to a jury which in answer to the only issue submitted found that Mrs. Kerr did not have testamentary capacity at the time she signed the 1974 will.

The trial court rendered judgment denying probate of the 1974 will and admitting the 1971 will to probate.

Appellants appeal on 12 points which we summarize as 3 main contentions.

Contention 1 asserts the trial court erred in refusing to submit special issues requested by appellants which inquired whether the deceased had: a) general testamentary capacity (excluding the insane delusion question for separate consideration); b) whether or not there was an insane delusion; c) whether or not the supposed insane delusion generally affected the 1974 will; d) whether or not the supposed insane delusion affected the revocation clause in the 1974 will.

Contention 2 asserts the trial court erred in rendering judgment for appellee because

there is no evidence to support the answer of the jury to Issue 1; and/or such answer is against the great weight and preponderance of the evidence.

Alta L. Kerr and her husband had five children: L. A. Kerr, Jr., Genevieve Kerr Spruance, Armstrong Kerr, Charles Kerr and Aileen Kerr Northway, who was the mother of appellee William Northway, Jr., and who died when he was three days old. His grandparents took him into their home and reared him. His grandfather died in 1937 when he was 12 years old; he continued to live with his grandmother, Alta L. Kerr, until he married at age 27. Thereafter their relationship remained close; he visited her almost daily. In 1953 Mrs. Kerr made a will which substantially devised appellee and her 4 living children equal shares in her estate. In 1958 Mrs. Kerr wrote a codicil to her will disposing 30 shares of AT&T stock acquired after executing the 1953 will, and then recited that except as modified the 1953 will remains in full force and effect. In 1964 Mrs. Kerr wrote another codicil reciting she now owns 220 shares of AT&T stock which she devised to her four children and appellee share and share alike; made other minor bequests; and recited that except as modified her 1953 will remains in full force and effect. On March 9, 1971 Mrs. Kerr signed a new will. It was prepared by Mrs. Kerr's lawyer, Honorable Bond Davis, after extensive consultations. It set up a $10,000 educational trust for the 5 children of L. A. Kerr, Jr., and devised the balance of her estate generally to her 4 children and appellee.

On May 21, 1974 Mrs. Kerr who was 99 years old became ill at home. Appellee was called that Mrs. Kerr had fallen and needed attention. He called Mrs. Kerr's doctor, Dr. Nixon, who told him to take Mrs. Kerr to Methodist Hospital for X-rays and tests. Appellee, Armstrong Kerr and Mrs. Spruance and a granddaughter took Mrs. Kerr to the hospital. She willingly went to the hospital; was thereafter X-rayed on May 22 and found to have no fractures; and wanted to go home; that on May 23 she suffered a stroke on her right side causing her to be agitated and confused;

that on May 24 the doctor ordered sitters 24 hours a day because the nurses needed extra help to handle her; that a "posey vest" was put on her to keep her from getting out of bed; that she remained agitated and confused until May 27 when she responded to medication, calmed down, and was discharged to go home; that she underwent a total personality change in the hospital; that she accused appellee Northway of putting her in the hospital, of trying to get her property, or put her away. Soon after returning to her home she consulted her attorney, Mr. Davis, about another will; Mr. Davis became aware there had been a break in her relationship with appellee, due to her resentment at being in the hospital, which she directed at appellee. There is evidence she told Mr. Davis's partner she was taken to the hospital by appellee against her wishes and was afraid he would put her back in again; that he put her in the hospital because she would not give him the land on the Frio River. Appellant Mrs. Spruance and other witnesses testified that Mrs. Kerr needed to be in the hospital; that appellee would not harm her in any manner; that appellee had done nothing to warrant Mrs. Kerr's fears; Mr. Davis testified Mrs. Kerr told him "I have given further thought as to what I want to do in my will," and that "I have had trouble with William [appellee]"; that Mrs. Kerr's belief that appellee meant to harm her was a circumstance that affected the disposition made toward him in the August 22, 1974 will which he prepared. The 1974 will virtually eliminated appellee as a beneficiary, cutting his share in Mrs. Kerr's Estate from some 20% to 25% devised him in all prior wills, back to $\frac{1}{48}$ of the residuary, or some 2%. Dr. Chittenden, a neuropsychiatrist, testified that a delusion is a false belief held by a person, not commonly held by other people, that cannot be resolved by the process of reasoning; that a delusion can occur from a variety of physical disorders affecting the brain function, including strokes; that in his opinion, based upon reasonable medical probability Mrs. Kerr had a stroke which was associated with a

personality change and a development of antipathy toward appellee for reasons which were unfounded; that in essence she became delusional in this respect due to the stroke; that she was influenced in her behavior· toward appellee by this delusion, which would not necessarily affect her behavior in other respects, or affect her ability to function normally outside the area of delusion, including ability to know her objects of bounty, and extent of her property, since there is no relationship between memory and delusion. All parties agree that in a general sense Mrs. Kerr was sane, and knew the extent of her property and who her children and grandchildren were, and that·she knew she was making the 1974 will.

By way of summary the evidence is that Mrs. Kerr raised appellee from infancy; treated him as one of her own children; had a close and affectionate relationship with him; devised him the share of her estate which would have been his mother's in the 1953, 1958, 1964, and 1971 wills or codicils; that this was her consistent attitude toward him until she was hospitalized and had the stroke in May 1974; that at this time there occurred a complete reversal of her lifelong attitude toward appellee; that although she needed to be hospitalized she violently reacted against it, directing against appellee without any rational basis, her intense resentment; asserting appellee wanted to put her away; take her property and even do her harm, that she maintained and reiterated these beliefs through the ensuing time until she made her will of August 22, 1974 which virtually eliminated appellee as an object of her bounty; that her treatment of appellee in this will was influenced by her groundless antipathy toward him and her fear of persecution by him, and that no one, not her lawyer, her doctor, nor her children (appellants) believed there was any basis for her antipathy and fear of appellee.

■ Appellants requested the submission of separate issues 1) as to whether Mrs. Kerr was of sound mind; 2) whether she was laboring under an insane delusion at the time she signed the 1974 will (defining insane delusion); 3) whether the insane delusion if any affected the revocation clause in the 1974 will, and 4) whether the 1971 will was revoked by the 1974 will.

The trial court refused such requested submission and submitted the case as follows:

"Special Issue No. 1. Do you find from a preponderance of the evidence, that at the time the August 22, 1974 will was signed by Alta L. Kerr, that she had testamentary capacity?

"Answer: She did not have testamentary capacity."

## INSTRUCTION

To make a valid will, the person making the will must have testamentary capacity, and must not, at the time of the execution of the will, be laboring under an insane delusion, which influenced the person executing such will to dispose of her property in a way which she would not have disposed of it but for the insane delusion.

· You are charged in connection with the term testamentary capacity, as that term is used in this charge, is meant that such person at the time of the execution of the will, must have had sufficient mental ability to understand the business in which she was engaged, the effect of her act in making the will, and the nature and extent of her property; she must be able to know her next of kin and the natural objects of her bounty and their claims upon her; she must have memory sufficient to collect in her mind the elements of the business about to be transacted and to hold them long enough to perceive at least their obvious relation to each other and to be able to form a reasonable judgment as to them.

The term "insane delusion" as used in this charge means: "The belief by Alta L. Kerr of a state of supposed facts which no rational person would believe, unless the delusion, if any, influenced her to make a disposition of her property different from that than she otherwise would have made, the fact that she entertained

such delusion does not affect the validity of the will and is not an "insane delusion".

If the maker of the will had any reasonable basis in fact to reach a conclusion, no matter how illogical or irrational, the conclusion cannot be an "insane delusion" as used in this charge. A mere mistaken belief or an erroneous or unjust conclusion is not an "insane delusion" if there is some foundation in fact or some basis on which the mental operation of the maker of the will may rest, even though the basis may be regarded by others as wholly insufficient.

You are further instructed that "when a person's false belief amounts, in law, to an insane delusion and the terms of her will are influenced thereby, testamentary capacity is lacking even though the person might know the nature and extent of her property, the effect of her will, and the natural objects of her bounty, and be able to handle complex business".

The trial court committed no reversible error in the manner in which it submitted this case. *Lindley v. Lindley*, Tex., 384 S.W.2d 676; *Rodgers v. Fleming*, Tex.Com. App., 3 S.W.2d 77.

We think the trial court correctly followed the settled law of Texas in submitting the issue of testamentary capacity with appropriate instructions as to insane delusion, and in refusing appellants' request for duplicitous submission which would split the single, controlling, and ultimate issue.

■ The evidence is ample to support the jury's answer to Issue 1, and such answer is not against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660.

Contentions 1 and 2 are overruled.

■ Contention 3 is that the trial court erred in overruling motion for new trial because there existed material jury misconduct which probably resulted in harm to appellants.

The case was given to the jury on Thursday; at five o'clock the jury stood 4 to 2 for the appellee, the 2 being Mrs. Remmert and Mr. Applin. The trial court recessed the jury until Friday morning. After the recess Thursday afternoon Mrs. Remmert consulted a medical dictionary, and asked a druggist the effect of a drug which the evidence reflected was given to Mrs. Kerr while she was in the hospital; and reported same to the jury Friday morning and that the drug could cause a confused state of mind (or hallucinations). Thereafter Mrs. Remmert changed her vote bringing the vote 5 to 1 for appellee. Thereafter the jury discussed the evidence again, and went over the evidence in the case again, and after that Mr. Applin changed his vote bringing the verdict 6 to 0 for appellee.

Rule 327 T.R.C.P. provides "when the ground of the motion [for new trial] is misconduct of the jury or * * * that they received other testimony * * *, the court shall hear evidence thereof from the jury * * * and may grant a new trial if such misconduct proved, or the testimony received * * * be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party".

Assuming Mrs. Remmert was influenced to change her vote by the other evidence received, there is no evidence that such affected Mr. Applin's vote. He voted for appellee only after the evidence had been "discussed again and we went over the evidence again * * * and after we had two more discussions".

The effect of drugs on Mrs. Kerr was not the central issue of the case. The contested will was executed 3 months after Mrs. Kerr was given medication at the hospital. The statement was made only once, it did not loom large in the deliberations, it was not discussed, the foreman stated the issue must not be discussed, and finally further and extensive deliberations of the evidence introduced at the trial occurred before Juror Applin decided to change his vote.

From the record as a whole, both on motion for new trial and on the trial in the

main, we think the trial court authorized to find and believe that the "other testimony" received and related by Juror Remmert had no effect on Juror Applin's vote and that same did not probably result in harm to appellants.

Contention 3 is overruled.

All appellants' points have been considered and are overruled.

AFFIRMED.