Sylvia **RODRIGUEZ**, et al., Appellants,

v.

John E. **MONTGOMERY**, M. D., Appellee.

No. 10–81–062–CV.

Court of Appeals of Texas, Waco.

March 11, 1982.

Rehearing Denied April 8, 1982.

Brenda S. Jenkins, Werner & Rusk, Houston, for appellants.

Dan Ryan, John C. Marshall, III, Kevin Dubose, Ryan & Marshall, Houston, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiffs Sylvia Rodriguez and her children from a take-nothing judgment in a medical malpractice suit against defendant Montgomery.

Plaintiffs, the wife and children of David Rodriguez, deceased, sued Dr. Montgomery, an internal medicine specialist, alleging defendant attended David Rodriguez as a patient on August 27, 1974 and on subsequent occasion, and was negligent in the medical care and treatment of Rodriguez; that Rodriguez died on October 11, 1974; that defendant was negligent in: failing to hospitalize Rodriguez on his first visit; failing to hospitalize Rodriguez after receipt of the result of the blood gas and pulmonary function test; failing to hospitalize Rodriguez on the second visit; failing to administer the drug heparin; failing to diagnose a pulmonary embolism; and failing to perform a lung scan; and that such negligence proximately caused the death of Rodriguez.

Trial was to a jury which failed to find that defendant failed to provide medical care to Rodriguez, which a doctor specializing in the practice of internal medicine,

exercising ordinary prudence, acting under the same or similar circumstances, engaged in the practice of medicine in this or similar communities would have. The verdict fixed the reasonable funeral expense for the deceased at $1165.50; and fixed plaintiffs' damages at $220,000.

Plaintiffs appeal on 3 points asserting there was no evidence and/or insufficient evidence to support the jury's answer to the negligence issue; and that jury misconduct occurred, which was material, and based on the record as a whole probably resulted in harm to plaintiffs.

In considering the no evidence point, we consider only the evidence and inferences which support the finding that is being attacked, and disregard all evidence and inferences to the contrary. *Freeman v. Texas Compensation Ins. Co.*, Tex., 603 S.W.2d 186. In considering the insufficient evidence point, we will set aside the verdict only if, after considering all of the evidence, we find the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660.

Rodriguez first went to Dr. Montgomery on August 27, 1974. Rodriguez's history revealed a 48-year-old man who had been in good health and was physically active. For two weeks prior to seeing Dr. Montgomery he had experienced shortness of breath, and the night before he had awakened suffering from severe shortness of breath, pain between his shoulder blades and excessive perspiration. Physical examination, blood count, electrocardiogram, chest X-ray, and pulmonary function studies revealed nothing abnormal. A blood gas test made after Rodriguez left defendant's office showed the oxygen pressure in Rodriguez's blood slightly below normal. Dr. Montgomery was unable to make a diagnosis at this point. Dr. Montgomery called Rodriguez to come in for a second visit because he had not heard from him and was not satisfied with the result of the tests. Rodriguez was examined on September 25, 1974 and still complained of difficulty in breathing. Dr. Montgomery recom-

mended hospitalization but Rodriguez elected not to go to the hospital.

Rodriguez died suddenly on October 11, 1974. The autopsy lists the cause of death as "massive pulmonary embolism". Dr. Jachimczyk, Chief Medical Examiner for Harris County, testified an embolism is a thickened blood substance which usually originates in the leg. If this substance moves through the veins and reaches the lungs it is only a few minutes before death occurs. The embolism found in Rodriguez at the autopsy was a fresh one, only a few minutes old; thus was not present on either of the two office visits by deceased to Dr. Montgomery's office.

Dr. Lancaster testified that a pulmonary embolus in Rodriguez would have been "down the line in my differential" [diagnosis] as far as possible causes of Rodriguez's complaints. A pulmonary embolus would have been a consideration but "a remote consideration"; that given deceased's condition and test results he would not have suspected a pulmonary embolus.

Dr. Lancaster further testified that under all the facts he would not have hospitalized Rodriguez on his first visit. Dr. Jachimczyk testified he would not have hospitalized Rodriguez after the receipt of the result of the blood gas and function test because the test would not give him a high index of suspicion of a pulmonary embolus. Dr. Montgomery testified that he recommended hospitalization on the second office visit on September 25, 1974, but that Rodriguez chose not to accept this recommendation. Dr. Lancaster testified he would have recommended hospitalization at this point but would not have insisted on it with a great deal of forcefulness. Dr. Montgomery testified that treatment of a patient with anticoagulant drugs (heparin) is a dangerous treatment because they are associated with significant complications. Dr. Lancaster and Dr. Jachimczyk testified to like effect. Dr. Lancaster testified that the symptoms and history given by Rodriguez to Dr. Montgomery did not suggest pulmonary embolism, that under these conditions a diagnosis of pulmonary embolism was at best

a remote possibility, and that while a diagnosis of pulmonary embolism might be considered, it would be far down the list of possibilities in a differential diagnosis.

Dr. Montgomery testified he did not order a lung scan because it would not have been particularly useful in diagnosing the patient's problem; and Dr. Lancaster testified a lung scan is not a conclusive test for pulmonary embolus.

Dr. Hallson, a doctor who retired from active practice of surgery in 1962; worked two years in the admitting office of the VA Hospital; studied law; practiced law for a while; has not been on the active staff of any hospital since 1964; has been an inactive member of the Medical Society for 15 years; who keeps up with the medical profession by contact with friends in the profession and reading medical journals and books testified that Dr. Montgomery should have hospitalized Rodriguez after the first visit and testified to a standard of care generally from which the jury could have found defendant negligent.

We think the evidence ample to sustain the finding of the jury and overrule plaintiffs' 1st and 2nd points.

Plaintiffs' 3rd point asserts three instances of jury misconduct.

The party complaining of jury misconduct has the burden to prove the overt act of misconduct, that it was material misconduct, and "from the record as a whole that injury probably resulted". Rule 327 TRCP. *Fountain v. Ferguson*, Tex., 441 S.W.2d 506; *McVicker v. Johnson County*, Tex.Civ.App. (Waco) NRE, 616 S.W.2d 430.

Plaintiffs assert the juror, Ms. Whittle, stated that she thought there had been no negligence on the part of the doctor; that she further stated she had a relative or somebody she knew that had an embolism, and that it was a hard thing to detect. Another juror promptly told her she should not be talking about this, and the jury all agreed "we shouldn't be talking about that".

Admonitories of other jurors renders injury unlikely. *Argonant Ins. v. ABC Steel Products*, Tex.Civ.App. (Texarkana) NRE, 582 S.W.2d 883.

The above occurred after the jury had voted 9 to 3 in favor of no negligence. Voting later the jury voted 10 to 2 and arrived at the verdict of no negligence. There is no proof that the third juror changed his or her vote because of the juror's comments. *Spruance v. Northway*, Tex.Civ.App. (Waco) NRE, 601 S.W.2d 153; *Mrs. Baird's Bread Co. v. Hearn*, 157 Tex. 159, 300 S.W.2d 646.

Plaintiffs further assert there were references to insurance and to the relative wealth of the parties. These comments were promptly rebuked by other jurors, and in any event occurred after the liability issue had been resolved. The jury fixed plaintiffs' damage at $220,000, which further negates any harmful effect.

From the record as a whole we cannot say that injury probably resulted from the asserted jury misconduct.

All plaintiffs' points are overruled.

AFFIRMED.