**ARMSTRONG FOREST PRODUCTS,**
**Appellant,**

v.

**REDEMPCO, INC., et al., Appellees.**

**No. 6–90–050–CV.**

Court of Appeals of Texas,
Texarkana.

Sept. 4, 1991.

Rehearing Denied Sept. 4, 1991.

Rae Leifeste, Hall & Lane, San Angelo, for appellant.

John H. Hofmann, Smith, Carter, Rose, Finley & Hofmann, San Angelo, for appellees Paul Fite, Ind. and Americana Inn.

Ralph Dreyer, San Angelo, for appellees Redempco, Inc. and Dreyer Music Co.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Armstrong Forest Products appeals from a judgment in a suit on a lease that it brought as lessor against Redempco, Inc. and others as lessees. Trial was to the court. The trial court rendered judgment for Armstrong for unpaid rent, taxes, and attorney's fees against all but three of the defendants: Paul Fite, Olan Dreyer, and Dreyer Music Company. Armstrong seeks to reverse that part of the judgment denying relief against Paul Fite and Olan Dreyer and also seeks an increase in the award of attorney's fees against all defendants.

In eleven points of error, Armstrong raises the following issues:

(1) Whether the evidence established as a matter of law that appellee Paul Fite orally or in writing assumed the obligations of the lease.

(2) Whether the finding that Paul Fite did not orally or in writing assume the obligations of the lease is against the great weight and preponderance of the evidence.

(3) Whether Paul Fite assumed the obligations of the lease as a matter of law by his purchase of the leasehold estate in question at a deed of trust sale.

(4) Whether the trial court should have granted judgment for appellant against Paul Fite jointly and severally with the other defendants held liable for the obligations under the lease for rent, taxes, damages to the premises, and attorney's fees.

(5) Whether the lease excluded appellant's ownership of any improvements situated on the real estate.

(6) Whether the lease disclaimed and/or conveyed ownership of all improvements on the leased premises to the lessee.

(7) Whether, under terms of lease, appellant was entitled to recover costs of repairs or diminution in value of improvements.

(8) Whether the trial court should have granted judgment for appellant for cost of repairs or diminution in value of improvements under terms of the lease requiring lessee and its assigns to keep and maintain the improvements in good order and repair.

(9) Whether the court erred in awarding only $7,500 in attorney's fees to appellant.

(10) Whether the award of only $7,500 in attorney's fees was against the great weight and preponderance of the evidence.

(11) Whether the trial court's conclusion of law that appellee Redempco, Inc. is not the alter ego of appellee Dreyer Music Company is against the great weight and preponderance of the evidence.

In 1961, Armstrong, a partnership, leased a tract of land in San Angelo, Tom Green County, to SAR, Inc., which built a motel on the property. The lease was eventually terminated, and on June 1, 1966, Armstrong executed a ground lease to appellee Redempco, Inc., a corporation whose president was Olan Dreyer and whose stock was wholly owned by Dreyer Music Company. The lease provided that the lessee was to pay rent, ad valorem taxes, and utilities, and it also required the lessee to maintain the premises in good repair. Lessees were authorized to assign or sublet the lease in whole or in part, and assignee or sublessee were bound by the terms, conditions, and covenants of the lease. Thereafter, the leasehold estate changed hands several times.

a. On December 14, 1977, Redempco assigned its interest in the leasehold estate to Fred and Linda Scarbrough and Ed and Louise Thompson. Redempco also executed to those parties a bill of sale for all personal property located on the premises leased, taking from the parties a promissory note. The assignees executed a deed of trust payable to Redempco as security for the note.

b. On December 21, 1977, the Scarbroughs and Thompsons assigned the lease to another group of individuals ("Rogers") and gave a bill of sale to those persons for the personal property located on the premises. Rogers also executed a deed of trust payable to the Scarbroughs and the Thompsons to secure payment of the promissory note.

c. Rogers defaulted on the note, and the substitute trustee foreclosed the deed of trust and sold the leasehold estate to Ed and Louise Thompson and Paul and Marjorie Fite ("Fite").

d. On April 28, 1983, Fite conveyed the leasehold estate by warranty deed with vendor's lien to Edward Hauck, who in turn executed real estate lien notes payable to Fite. On the same date, Fite and Hauck executed a "contract of sale and purchase" in which Fite conveyed the leasehold estate and Hauck agreed to purchase the personal property located on the premises. In addition, Hauck executed a deed of trust payable to Fite to secure payment for the property involved.

e. Hauck defaulted, the deed of trust was foreclosed, and on March 5, 1985, Fite purchased the leasehold estate at the foreclosure sale, receiving a deed from the substitute trustee.

f. On August 9, 1985, Fite executed a "purchase agreement" conveying the lease-

hold to Cavalier Investment, Inc., an Oklahoma corporation. Fite also executed a warranty deed with vendor's lien, secured by a deed of trust.

g. On October 17, 1985, Armstrong's attorney gave Cavalier notice that it was in default.

h. On November 27, 1985, Armstrong gave notice to various persons that they were in apparent default as assignees of the leasehold and of its intent to terminate the lease if all defects in the leasehold agreement were not cured.

i. By letter to Redempco's president, Olan Dreyer, on December 23, 1985, Armstrong terminated the lease and declared that it was re-entering the leased premises and repossessing all permanent improvements.

j. Cavalier sold its leasehold interest to a Mr. Kennon, who is not a party to the suit because Armstrong was unable to serve him. Purportedly, Kennon commenced renovations on the motel, removing the flooring and also the roof. Due to the lack of a roof, considerable damage occurred to the motel, and Armstrong eventually had the structures torn down because it was not cost effective to leave it in place. Armstrong received $1,000 in salvage payment upon demolition.

■ In four points of error, Armstrong contends that the trial court erred in finding that Fite did not assume the obligations of the lease. He first challenges Finding of Fact 12, in which the court found: "Paul Fite did not orally or in writing assume the obligations of the lease at any time." This amounts to a failure to find for Armstrong on an issue in which it had the burden of proof. Armstrong argues that the evidence established the assumption of the obligations of the lease as a matter of law.

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's verdict upon questions. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.–Houston [14th Dist.] 1977, writ ref'd n.r.e.) The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards which are applied in reviewing the legal and factual sufficiency of the evidence to support a jury's answer to a jury question. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.–Dallas 1981, writ ref'd n.r.e.)

In reviewing an "as a matter of law challenge," we must first examine the record for evidence that supports the court's finding, while ignoring all evidence to the contrary. If there is *no* evidence to support the fact finder's answer, we must then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex.1989). The appellant must show that the evidence conclusively established all vital facts in support of the issue as a matter of law. *Meyerland Community Improvement Association v. Temple*, 700 S.W.2d 263, 267 (Tex.App.–Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Fite pled the statute of frauds as an affirmative defense. That statute provides in relevant part that a lease of real estate for a term longer than one year is not enforceable unless the agreement is in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. TEX.BUS. & COM.CODE ANN. § 26.01 (Vernon 1987). It is undisputed that the lease in question is for real estate for a term longer than one year.

Armstrong had the burden to show that Fite assumed the obligations of the lease, and the trial court failed to find for him on that issue in its Finding of Fact 12. There was evidence to support the court's failure to find. Unlike others who were assignees in the case, Fite did not execute a document in which there was stated that he was assuming those obligations. At trial, Fite introduced a request for admission which asked Armstrong to admit or deny: "That Paul Fite never orally expressed to Plaintiff [Armstrong] his intention ... to assume the lease which is the subject of this lawsuit." The answer supplied by Armstrong to that request for admission was: "Plaintiff admits this request." An-

other request asked Armstrong to admit or deny: "That Plaintiff [Armstrong] knew that Paul Fite and Ed Thompson, d/b/a Americana Inn were in possession of the premises but did not require said Defendants to expressly assume the lease which is the subject of this lawsuit." Armstrong replied: "Plaintiff admits this request." Fite also introduced another request for admission: "Plaintiff [Armstrong] does not have any document or other writing in its possession which is signed by Paul Fite by which Paul Fite assumed the lease on which the lawsuit is based." Armstrong answered that it did not have in its possession any such document expressly stating that Fite assumed the lease, but it hedged its answer with an additional comment that it had other instruments evidencing assumption of the lease. After a colloquy, the trial court indicated that Armstrong's answer was evasive and deemed the answer admitted. Later, when the trial court gave Armstrong another opportunity to produce such other instruments, Armstrong indicated that the only instruments it had were the two substitute trustee's deeds acquired by Fite at the two foreclosure sales. Those deeds do not contain language by which Fite expressly or by inference assumed the obligations of the underlying leasehold estate.

We conclude that the admissions by Armstrong constitute evidence of probative force which supports the trial court's failure to find in favor of Armstrong on this issue. Accordingly, we need not look to the evidence which supports Armstrong's position. *Holley v. Watts*, 629 S.W.2d 694, 696–97 (Tex.1982). This point of error is overruled.

Next, Armstrong contends that the court's finding is against the great weight and preponderance of the evidence. This contention requires this court to examine the entire record, first to determine if there is some evidence supporting the failure to find, and then to determine from the entire record whether the failure to find is manifestly unjust. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). Reversal is warranted only if the great weight and preponderance of the evidence supports an affirmative answer. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

We have already concluded above that there was some evidence supporting the court's failure to find that Fite orally or in writing assumed the obligation of the lease. Armstrong argues that Fite became an assignee on the lease by virtue of having bought in the leasehold at a foreclosure sale after default by an assignee, citing *Amco Trust, Inc. v. Naylor*, 159 Tex. 146, 317 S.W.2d 47 (1958). In that case, the Court held that the owner of a security interest in a leasehold estate who takes possession of the leased premises does not thereby become an assignee and liable as such to the lessor for the payment of rent under terms of the lease. *Id.*, 317 S.W.2d at 49. In *dicta*, the Court stated that "In the present case, the lease was assigned to petitioner solely as security, and there is nothing in the record to suggest that the lien was ever foreclosed or that petitioner acquired [the defaulting lessee's] entire interest in the leasehold estate in any other manner." *Id.*, at 51. Armstrong argues that when its lien in the instant case against Rogers was foreclosed, the lessees parted with their entire interest in the lease, and Fite therefore became an assignee and responsible for the covenants of the lease. The trial court noted, however, that Redempco retained a security interest in the original lease, which was the lease being reassigned as the property changed hands. The trial court then concluded that there was no express assumption of the lease by Fite and that Armstrong's argument that Fite received the entire leasehold and thus became an assignee was without merit. We agree. Armstrong cites various other cases, but none is authority for holding that Fite assumed all obligation of the leasehold of the estate.

Armstrong suggests that by negative inference, the above-referenced *dicta* from *Amco Trust* leads to the conclusion that where the defaulting lessee's entire interest in the leasehold estate was acquired in any other manner, Fite, as owner of the security interest who purchased the leasehold interest and took possession, thereby

became an assignee and liable to the lessor under the terms of the lease. Because we have previously concluded that Fite did not assume all of the obligations of the lease, we disagree with this contention. This point of error is overruled.

Next, Armstrong contends that the court erred in its Conclusion of Law 2 that Paul Fite did not assume the obligations of the lease, because Fite did assume such obligation by his purchase of the leasehold estate. The court concluded:

The defendant PAUL FITE was not an obligation assuming assignee of said lease by reason of his acquiring his interest by and through the substitute trustee's deeds set out under the foregoing findings of fact Nos 10 and 11, and had not personally assumed the covenants and obligations under said lease. At the time PAUL FITE so acquired his interest he did not acquire the entire interest of the original lease, since there were outstanding various vendor's liens(s) and superior title(s) in favor of previous assignor(s) in the chain of title.

Conclusions of law may be upheld on appeal if the judgment can be sustained upon any legal theory supported by the evidence. *Simpson v. Simpson*, 727 S.W.2d 662, 664 (Tex.App.–Dallas 1987, no writ). This conclusion of law was predicated on evidence that Paul Fite did not personally assume the covenants and obligations under the lease. This point of error is overruled.

Finally, Armstrong argues that the trial court should have found Paul Fite jointly and severally liable for the same damages which were found against the other defendants. Because of our conclusion above that Fite did not assume all of the obligations of the lease, and thereby become an assignee, we disagree. This point of error is overruled.

Next, in four points of error, Armstrong complains of the trial court's failure to find that it was entitled to damages under the lease for failure of the appellees to keep the premises in good repair. He first contends that Findings of Fact 15 and 16 are erroneous because the evidence established lessor's ownership of

improvements upon lease termination as a matter of law. Findings 15 and 16 are as follows:

15. Said lease specifically excluded the ownership in or any ownership claim by the lessor from the "property covered by said lease" of any improvements situated on the real estate. The lease specifically limited the "leased property" to the owner's (lessor's) ownership of the fee simple estate in the land without any improvements.

16. Said lease specifically disclaimed and/or conveyed ownership of all improvements on the leased premises to the lessee. (Par 29 of the lease).

In reviewing this "as a matter of law" challenge, we will apply the standard previously expressed.

Paragraph 29 of the underlying lease agreement states:

Subject to the lien granted in Paragraph 27 hereof, Lessor, in consideration of this lease, hereby assigns to Lessee without warranty, either express or implied, any interest it may have in the property placed on the land herein leased and described in Paragraph 28(a), reserving to itself and not assigning, however, all interest in the fee simple title to the land leased hereunder burdened only with this lease and subject to all recorded mortgages and liens, the payment of which are not assumed by Lessee.

The lien in Paragraph 27 provided that in the event of a default in rental payments, lessor (Armstrong) could take possession of the property owned by lessee, sell it, and apply proceeds to rental amounts due and costs of sale, with the remainder, if any, going back to lessee. The provision of Paragraphs 27 and 29 of the original lease are some evidence which supports the trial court's failure to find for Armstrong in Findings of Fact 15 and 16. It is therefore unnecessary to examine the entire record to determine if the contrary proposition was established as a matter of law. Points of Error 5 and 6 are overruled.

Next, Armstrong contends that the trial court erred in its Conclusion of Law 3, because the lease provides for the lessee

and its assigns to keep and maintain the improvements in good order and repair. The court's Conclusion of Law 3 is as follows:

Plaintiff is not entitled to recover for any costs or repairs or diminution of value of the demised premises as covered by the lease by reason of the condition of any improvements not owned by the lessor.

As previously noted, conclusions of law may be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Simpson v. Simpson*, 727 S.W.2d at 664.

We have previously discussed above the trial court's Findings of Fact 15 and 16 in which the court found that ownership of the property built on the land was in the lessees and not in the lessor. If the property was not owned by lessor, except if it elected to take the property upon default in rental payments, it should not be entitled to claim damages for diminution in value of such property. Moreover, Armstrong's own witness, real estate appraiser Carl Brinegar, testified that the value of the improvements in good, repaired condition was $131,000 and that at the time of contract termination, in a condition of disrepair, the buildings and improvements had no value. Brinegar further testified that if the actual income of the motel property was less than the actual expenses on the property, given reasonable management, he would assume that the improvements had reached the end of their life and would have no value. Brinegar indicated that the cost of restoring the property would have been greater than the value it could ever have achieved. There was also an indication that the property in question had been in use for almost twenty years and was therefore very near the end of its useful life.

The trial judge questioned Armstrong's counsel extensively as to the issue of diminution of value, and although he admitted into evidence data concerning Armstrong's contentions, he stated that it was his view that under the facts of this case, diminution had no place in the lawsuit. We agree. The trial court found that the improve-ments were not owned by Armstrong, and its Conclusion of Law 3 reinforced that finding by concluding that Armstrong was not entitled to recover for any costs for repairs or diminution in value of the *demised premises* (the land) as covered by the lease by reason of the condition of any *improvements* not owned by Armstrong. We again agree. Point of Error 7 is overruled.

Next, Armstrong argues that the trial court erred in failing to grant judgment in its favor for costs of repair or diminution in value, because the lease provides for the lessee and its assigns to keep and maintain the improvements in good order. Armstrong contends that the lease provision against waste and the requirement that the "demised premises and all improvements thereon" shall be kept in good repair, is clear and unambiguous proof that it is entitled to damages under the lease for appellees' failure to keep the premises in good repair. This issue has been resolved above in our review of Points of Error 5, 6, and 7. For reasons there expressed, Point of Error 8 is overruled.

In Points of Error 9 and 10, Armstrong contends that the trial court erred in Finding of Fact 22, in that a greater amount of attorney's fees was established as a matter of law, or alternatively, because the finding was against the great weight and preponderance of the evidence. Finding of Fact 22 is as follows:

22. While plaintiff's attorneys may have spent considerable time in connection with their handling of this case, the Court finds that reasonable and necessary attorneys fees against the original lessee and those assignees who assumed the obligations of the original lessee and who were liable for the judgment awarded the plaintiff were $7,500.

Armstrong's attorney called himself as an expert witness on attorney's fees. He testified that his law firm had expended approximately 218 hours on the case, that the firm's average rate per hour was approximately $106, that seven attorneys from the firm worked on the case, and that the total fee earned and requested was

$23,018.00. The testimony was not objected to or controverted by the appellees.

 The reasonableness of attorney's fees is a matter for the trier of fact, in this case the trial court. *Giles v. Cardenas*, 697 S.W.2d 422 (Tex.App.–San Antonio 1985, writ ref'd n.r.e.). The fee must be reasonable under the particular circumstances of the case and must bear some reasonable relationship to the amount in controversy. *Argonaut Insurance Co. v. ABC Steel Products Co.*, 582 S.W.2d 883 (Tex.Civ.App.–Texarkana 1979, writ ref'd n.r.e.). The fee should be only that which would be reasonable for a litigant himself to pay his own attorney. *Id.*, at 889. Even if the evidence is uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880 (Tex.1990). The trial court, as well as the appellate court, has the duty to reduce the fee pled for if it is excessive. *Argonaut Insurance Co. v. ABC Steel Products Co.*, 582 S.W.2d 883. In determining whether the award is appropriate, the trial court was entitled to look at the entire record and to view the matter in the light of the amount in controversy, the nature of the case, and its own common knowledge and experience as lawyer and judge. *Id.* In the case at bar, it is obvious from the trial judge's Finding of Fact 22 that the trial judge determined that the case had been overworked. Such a determination was within the trial court's sound discretion. *Id.* This point of error is overruled.

Armstrong also urges that the trial court's award of only $7,500 in atorney's fees was against the great weight and preponderance of the evidence. His sole support for this argument, however, is that it requested and proved up attorney's fees in the amount of $23,018, and the trial court awarded only $7,500. Expert opinions, however, are not binding on the fact finder. Inferentially, the trial judge found the case to have been overworked. Armstrong has cited no authority which supports his conclusions. Accordingly, he has waived error and nothing is before us for review. Point of Error 10 is overruled.

In its brief, Armstrong complained of Conclusion of Law 4 ("The proof offered fails to establish that REDEMPCO, INC., is the alter ego of DREYER MUSIC COMPANY"), because the finding is against the great weight and preponderance of the evidence. At oral argument, however, Armstrong voluntarily withdrew this point. Accordingly, the final point of error is overruled.

The judgment of the trial court is affirmed.